WILLIAM H. SWIFT *vs.* E. CALVIN WILLIAMS and JOSEPH T. MOORE, Trustees. E. CALVIN WILLIAMS and JOSEPH T. MOORE, Trustees *vs.* THE MANUFACTURERS' NATIONAL BANK OF BALTIMORE, *et al.*

*Misappropriation of Trust funds—Liability for a Breach of Trust—Payment of Debt with Trust Money—Notice—Failure to make Inquiry—Negligence—Rule as to a Trust fund kept in Bank.*

W. and V. were appointed trustees by the Court to sell certain real estate, and a sale was effected, and reported to the Court. Pending exceptions to the sale, W. being desirous of going to Europe, and for the purpose of avoiding any delay in consummating the sale, and in distributing the proceeds thereof, obtained an order from the Court authorizing V. to receive "the full amount of the purchase money of said real estate, notwithstanding the absence of his co-trustee; and in all respects to act as fully in all matters pertaining to said trust, as if both were present and acting." After the passage of this order, the exceptions were disposed of, and the

sale was ratified. The purchaser thereupon in payment of the pur-
chase money, gave a check payable to the order of W. and V. trustees,
which V. endorsed as trustee, for deposit, to the Manufacturers'
Bank, which opened an account with V. as if sole trustee, although,
at that very time, an account was standing on the books of the Bank,
in their names jointly, and passed the amount of the check to his
credit as such trustee. At the time of the deposit V. presented to
the Bank a copy of the Court's order. On the same day the money
was deposited, V. gave his check, signed by himself alone as trustee,
to H. for a portion of the deposit, in payment of a preferred debt due
S. a client of H. by V. as trustee of the Gazette Publishing Com-
pany, such debt having no connection with said trust fund. The
Mechanics' Bank on which the check, given to V. in payment of the
purchase money, was drawn, refused to honor it because it was en-
dorsed by V. alone, and not by W. and V. to whose order it was
made payable. V. thereupon made an arrangement with the Manu-
facturers' Bank to alter the endorsement of the check by appending
the name of W. and to change the deposit so that it should stand in
the name of both trustees. The Mechanics' Bank, however, refused
to honor the check in that shape, and the purchaser took a cashier's
check from said Bank for the same amount as the rejected check,
and deposited it in the Manufacturers' Bank, to the joint credit of
W. and V. trustees, and took up the rejected check. V. thereupon
added the name of W. trustee per V. as a drawer of the check to
H. so that it could be carried as a formally correct credit to the
Manufacturers' Bank as a disbursement from the trust fund. In
this way the misapplication of a large portion of the trust fund
was accomplished, by appropriating it to the payment of a claim,
which had no connection whatever with the trust estate. On a bill
in equity filed against V., the Manufacturers' Bank, and S. to compel
the repayment of that part of the trust fund thus wrongfully mis-
appropriated, it was HELD:

1st. That the Manufacturers' Bank was, equally with the other de-
fendants, bound to see that the trust fund, improperly appropriated
through its aid, was made good; and that the question was not one
of primary or secondary liability, but whether all who had par-
ticipated in any degree in bringing about the wrong, should not be
compelled to see it righted.

2nd. That as this was a suit for money which had been paid to S.
from an estate against which he had no claim, and from which he
was not entitled to be paid, and which he had really received in
mistake, it was wholly immaterial, so far as he was concerned,

whether he or his counsel had actual or constructive notice of the fact that the money paid was not such money as he was entitled to have paid to him.

3rd. That as the order of the Court gave V. no authority to pay away the trust funds, it could not be availed of by the Manufacturers' Bank as a defence for paying out the trust money as it did.

4th. That the Manufacturers' Bank was guilty of such negligence in failing to make inquiry, and in not learning the true state of facts, as to charge it with the knowledge of that which would have been obtained by proper diligence.

5th. That the facts of the case did not bring the Bank within the protection of the rule, that where there is a trust fund kept in Bank by the trustee depositor to be checked against, the contract between the Bank and the depositor, is that the Bank will pay according to the checks of the latter, and, when drawn in proper form, the Bank is bound to presume that the trustee is in the course of lawfully performing his duty, and to honor them accordingly.

APPEALS from the Circuit Court of Baltimore City.

The opinion states the case.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*Frederick W. Story*, and *Charles Marshall*, for the appellant Swift.

It is not a just argument for the Manufacturers' Bank to say in its answer, that "it permitted Mr. Veazey to make said addition to the signature to said check, to make it conform to the account upon which it was drawn ; and when it was thus *amended*, paid it, not perceiving how its action in this respect could be in any way prejudicial to said Hinkley." Its "not perceiving" is no answer. It did injure Mr. Hinkley, or Mr. Swift, his principal, or rather, it would injure him, if the bank could alter *his* check, and leave him to find it out months after, and then lose his money, when possibly he might have made it, if his check had not been paid as it originally stood.

But it altered the check to assist Mr. Veazey in his plans, and to make it appear that Swift got funds which he never intended to get, or in fact he never did get.

It is enough to say that *unless the check was entirely theirs*, they had no right to make the slightest alteration in it. If there were any liability in Mr. Swift, it arose on the original paper, and not on the altered paper. The original check has been destroyed by their alteration of it. From altered commercial paper, no liability can arise, either at law or in equity. Courts of equity repudiate even more strongly than those sitting on the law side, any attempt to alter a contract, without the consent of all parties interested. "*Ex turpi causa actio non oritur*," is a settled maxim of the law.

No action can be maintained in respect to such paper, against any party not consenting to it. *Mitchell vs. Ringgold*, 3 *Harr. & J.*, 159; *Wood vs. Steele*, 6 *Wallace*, 82.

As to alteration of negotiable instruments—1 *United States Digest, 1st Series*, 177; *Dietz vs. Harder*, 72 *Indiana*, 208; *Lunt vs. Silver*, 5 *Mo. App.*, 186.

To the attempt to hold him on the altered check, Swift may say: "*Non in hæc fœdera veni.*" It is quite as strong a case as *Kagel vs. Totten*, 59 *Md.*, 449.

The Union Bank, never received any of the trust fund. If liable to refund at all, it must be because the Manufacturers' Bank, which is plainly bound to replace the trust money it has applied for its own reimbursement, has a right to call upon the Union Bank to return the money paid to it by the Manufacturers' Bank, in pursuance of its contract with Veazey, and we submit that out of that contract no legal or equitable right can arise. *Taylor vs. Plummer*, 3 *Maule & S.*, 574; *Perry on Trusts, sec.* 855.

The money due by the Union Bank to the Manufacturers' Bank, upon notice by the latter, before 11 o'clock, that the Hinkley check was not good, being money of the Manufacturers' Bank, and not trust money in any sense,

would not be converted into trust money by the fact that the Manufacturers' Bank was repaid out of trust money. *Denton vs. Davies,* 18 *Vesey,* 499.

*William H. Brune, Jr., Sebastian Brown,* and *I. Nevett Steele,* for Williams and Moore, Trustees.

The liability of Swift is based upon the principle that he was paid money belonging to the Bull trust fund, under circumstances which make it his duty to restore that money to these trustees.

He was paid trust money which he is not entitled to keep, and he is bound to restore it. *Thomas vs. Mason,* 8 *Gill,* 9 ; 3 *Pomeroy's Eq. Juris., sec.* 1047 ; *Mayor, &c. of Baltimore vs. Lefferman,* 4 *Gill,* 425 ; *Abell vs. Brown,* 55 *Md.,* 222.

While the circumstances of this case make a Court of equity the proper forum for it, " mistake, misapprehension or forgetfulness of facts" are sufficient even at law to require such a party to restore money so obtained. *Kelly vs. Solari,* 9 *Mees. & W.,* 54 ; *Baltimore and Sus. R. R. Co. vs. Faunce,* 6 *Gill,* 69, 77.

Where fraud exists, of course the case is still stronger in favor of such requirement. *Lester vs. Baltimore,* 29 *Md.,* 415.

The Bull trust funds can be followed into Swift's hands: " In equity the money so paid becomes the fund of the party prejudiced by the misapplication and he may . . . . follow the fund." *Thomas vs. Mason,* 8 *Gill,* 9 ; See also *Huguenin vs. Baseley,* 14 *Ves. Jr.,* 273, 289 ; *Bridgman vs. Green,* 2 *Ves.,* 627 ; *Taylor vs. Plumer,* 3 *Maull & S.,* 562, 574 ; *In re Hallett's Estate,* 13 *Ch. Div.,* 696 ; *Hopper vs. Conyers, L. R.,* 2 *Eq. Cas.,* 549 ; *Frith vs. Cartland,* 2 *Hem. & M.,* 417 ; *Cook vs. Tullis,* 18 *Wall.,* 332 ; *Knatchbull vs. Hallett, L. R.,* 13 *Ch. Div.,* 696, (1879) ; *Pennell vs. Deffell,* 4 *D., M. & G.,* 372.

Swift had notice of the trust. " Whatever is sufficient to put a party upon inquiry is good notice in equity."

Swift *vs.* Williams and Moore, Trustees.

*Magruder vs. Peter,* 11 *G. & J.,* 243 ; *Ringgold vs. Bryan,* 3 *Md. Ch. Dec.,* 488 ; *Price vs. McDonald,* 1 *Md.,* 419 ; *Smoot vs. Rea,* 19 *Md.,* 412 ; *Abrams vs. Sheehan,* 40 *Md.,* 457 ; *Third Nat'l Bank of Baltimore vs. Lange,* 51 *Md.,* 149 ; *Abell vs. Brown,* 55 *Md.,* 222 ; *Biddinger vs. Wiland,* 67 *Md.,* 359 ; 2 *Story's Eq.,* secs. 1217–19 ; *Hardy vs. Summers,* 10 *G. & J.,* 324 ; *Baynard vs. Norris,* 5 *Gill* 483 ; *Graff vs. Castleman,* 5 *Randolph,* 207 ; *Pendleton vs. Fay,* 2 *Paige,* 202.

"It is well settled, that if anything appears to a party calculated to attract attention or stimulate inquiry, the person is affected with knowledge of all that the inquiry would have disclosed." *Bunting vs. Ricks,* 2 *Dev. & Bat.,* 130 ; See also *Ellis vs. Horrmann,* 90 *N. Y.,* 473, 475.

Knowledge of, or notice to, agent or sub-agent, of course equally affects the principal. *Winchester and Lemmon vs. Balto. & Susq. R. R. Co.,* 4 *Md.,* 239 ; *Hoover vs. Wise,* 91 *U. S.,* 310 ; *Meier vs. Blume,* 80 *Mo.,* 179 ; *Sergeant vs. Ingersoll,* 7 *Barr,* (*Pa.,*) 167.

"Knowledge of counsel in a particular transaction is notice to his client." *May vs. Le Claire,* 11 *Wall.,* 217 ; *Fuller vs. Bennett,* 2 *Hare,* 394.

Absence of notice is not sufficient defence, unless extreme vigilance is shown. "A purchaser without notice must appear to have acted, not only with good faith, but with extreme vigilance, for equity refuses to protect the careless and the slothful." *Sergeant vs. Ingersoll,* 7 *Barr,* (*Pa.,*) 165, and 15 *Pa.,* 343.

If Swift be required by the decree of the Court of equity to return the money here sued for, he will be substantially restored to the same position in which he stood when he received the money of the Bull trust. Nor will he be deprived of any right of action he then had against Veazey or his sureties. See *Petty vs. Cooke, L. R.,* 6 *Q. B.,* 790 ; *Pritchard vs. Hitchcock,* 6 *Man. & G.,* 151 ; *Newington vs.*

*Levy, L. R.,* 5 *Com. P.,* 612; *Buchanan vs. Bordley,* 4 *H. & McH.,* 42; *Watson vs. Poague,* 42 *Iowa,* 582; *Insurance Co. vs. Wallis and Thomas,* 23 *Md.,* 173; *Kelsey vs. Hobby,* 16 *Pet.,* 269, 278.

It is clear that the defendant Swift cannot be excused on the ground of his having parted with a valuable consideration. This being so, it is no protection to him that he and his agents did not act with actual *mala fides.* Unless he and they had no notice, and in addition he were a purchaser for valuable consideration, the utmost good faith could not shield him in this transaction. 2 *Pomeroy Eq. Jur.,* sec. 745; *Oliver vs. Piatt,* 3 *How.,* 401.

The alteration by Veazey of the check given to Hinkley can be no defence of Swift as against these complainants. The genuine unaltered check, gave him no right to be paid out of the deposit in the names of the two trustees. "If the deposit is placed to the credit of divers persons as trustees, the signature of all is indispensable to the validity of the check." *Morse on Banks and Banking,* (2nd Ed.,) 290, 293.

The liability of the Manufacturers' Bank is established, if it be shown that by its improper and unauthorized conduct, or that of its officers, either alone or in co-operation with Veazey, the money belonging to the Bull trust fund was paid to a party not entitled to it, or that for any other reason the said money is still in the bank, so far as the rights of these complainants are concerned.

The bank was not authorized to open the credit in the name of one trustee, upon the deposit of Justis' first check to the order of both. It could not have been so authorized irrespective of the order of Court passed the 14th of July, 1886, as it is a familiar principle of bank law that a credit must correspond exactly to the deposit upon which it is based, because the signature on any check drawn against a deposit should be identical with the designation of the party or parties in whose name the deposit has been made. *Morse on Banks and Banking,* (2nd Ed.,) 290, 293.

Swift *vs.* Williams and Moore, Trustees.

The order of the Court upon which the bank apparently relied, was not a sufficient authority for this purpose, even upon the theory, that it operated as a power of attorney. A check properly signed under a power of attorney would have shown on its face the name of the constituent; .the Hinkley check, drawn in conformity. with the credit opened on the bank's books, did not. This co-operation of the bank with Veazey resulted in a fraud upon these complainants which it cannot be held was authorized by the terms of the order, how far soever its meaning be stretched. *Stone vs. Marsh, Ryan & M.,* 457.

In *Sloman vs. Bank of England,* 14 *Simons,* 475, it was held by Vice-Chancellor SHADWELL, that "the bank, having authorized a transfer (of stock) which they ought not to have sanctioned, are themselves now liable in a Court of equity to restore to the parties complainant the stock as it stood immediately before the transfer."

Especial care is exacted of banks in the matter of trust funds deposited with them, inasmuch as the ordinary relation of debtor and creditor does not exist in such cases. *Carman vs. Franklin Bank,* 61 *Md.,* 469.

If payment of the Bull trust money was made to Swift under a *mistake of fact* on the part of the bank, it is none the less liable to the trustees, even if, after restoring the money to them, the bank could recover it back from Swift. See *Citizens' Bank of Baltimore vs. Grafflin,* 31 *Md.,* 519; *George's Creek Coal and Iron Co. vs. County Commissioners of Alleghany County,* 59 *Md.,* 259.

*John Prentiss Poe,* for the Manufacturers' National Bank.

IRVING, J., delivered the opinion of the Court.

This is a suit in equity brought by E. Calvin Williams and Joseph T. Moore, trustees, under decrees of the Circuit Court of Baltimore City, in the case of *Robert M. Bull*

*and others against George W. Bull and others,* to recover certain funds of their trust alleged to have been misapplied by I. Parker Veazey, a former trustee, who has been removed, and in whose place Joseph T. Moore has been appointed by order of Court as co-trustee with Mr. Williams.

About the main facts in the case there is no dispute. By the first decree in the case Messrs. Williams and Veazey were appointed trustees for the sale of the real estate mentioned in the proceedings. A sale was effected and reported to the Court. Exceptions to that sale were pending, when Mr. Williams, being out of health, and desirous of sailing for Europe so represented to the Court; and for the purpose of "avoiding any delay in consummating said sale and the distribution of the proceeds thereof under a proper account to be stated by the auditor, so far as the same may not be objected to," petitioned the Court to allow I. P. Veazey his co-trustee to receive the purchase money from the purchaser, "and in all respects to act as fully during the absence of the petitioner as if both were present and acting." Upon that petition the Circuit Court passed this order: "Ordered by the Circuit Court for Baltimore City this 14th of July, 1886, upon the foregoing petition, that I. Parker Veazey, one of the trustees appointed by the decree heretofore passed in this cause, be and he is hereby authorized to receive from John C. C. Justis, the purchaser at the sale heretofore reported to this Court, the full amount of the purchase money notwithstanding the absence of his co-trustee; and in all respects to act as fully, in all matters pertaining to said trust as if both were present and acting." This petition stated that both trustees had qualified, by each giving a separate bond.

After the passage of that order, the exceptions were disposed of and the sale was ratified. The purchaser, John C. C. Justis immediately proceeded to pay for the property he had bought. To do so, Messrs. Justis &

Armiger drew a check on the National Mechanics' Bank for $28,121.55, the amount of the purchase money, which was made payable to the order of John C. C. Justis.  This check Justis endorsed " to the order of E. Calvin Williams and I. Parker Veazey, trustees," adding in this endorsement that it was " in full settlement upon property 192 and 194 W. Baltimore street;" and Veazey conveyed the property to the purchaser.  Although this check was endorsed so as to make it payable to the order of both trustees, Veazey solely endorsed it, " I. Parker Veazey trustee " " for deposit," to the Manufacturers' National Bank.  Thereupon the Manufacturers' National Bank opened an account with Veazey, as if sole trustee, and passed the amount of that check to his credit as such trustee.  On the same day, (viz., 15th July, 1886,) Veazey who was sole trustee of the Gazette Publishing Company gave his check signed " I. Parker Veazey trustee " on the Manufacturers' National Bank, to E. O. Hinkley for fourteen thousand one hundred and forty-four dollars and eighty-two cents ($14,144.82,) in payment of a preferred debt due William H. Swift, from Veazey as trustee of the Gazette Publishing Company, under an order of the Court so awarding.  Having received this check, E. O. Hinkley, who was the attorney of Swift, for the collection of that claim, handed Veazey a release of Swift's claim against the trust estate of the Gazette Publishing Company.  This last mentioned check was deposited by Hinkley in the Union Bank to the credit of Hinkley & Morris, and the same was entered to their credit on the books of the bank and the bank book of Hinkley & Morris.  Both the Justis check and the Hinkley check went through the clearing house at the same time, on the 16th of July, 1886, and the balance due the banks from each other was accordingly ascertained ; but when the Justis check on the Mechanics' Bank actually came to that bank it was rejected ; and payment was refused by its president, because it was

Swift *vs.* Williams and Moore, Trustees.

endorsed to the Manufacturers' Bank by the order of Veazey trustee alone, whereas the endorsement of Justis was specially made *to the order* of E. Calvin Williams and I. Parker Veazey trustees. The Manufacturers' Bank being so notified, it notified the Union Bank, that Veazey's check to Hinkley was not good, but added it would probably be made right during the day. The Union Bank, in turn, notified Hinkley, who, at once, gave his check to cancel the credit he had received for it, and the check of Veazey was surrendered to him and he took it, and went to look for Veazey, to get an explanation of the matter from him. Having found Veazey, he was assured it was all right, and they together went down the street with the purpose of going to the Manufacturers' National Bank to see about the matter. On their way, Mr. Veazey saw Mr. Hines, the cashier of that bank, on the street, and said "that is the man I want to see" and left Hinkley and went to him. Some conversation was held with Hines, when he and Veazey came up to Hinkley, who had not heard their talk. Upon reaching Hinkley, Veazey said to him, in the presence of Hines "it is all right," to which Hines assented; and Hinkley was directed, with Hines' knowledge and assent, to redeposit the check in the Union Bank, which he immediately did. When he did so, his check for the correction of the supposed erroneous credit to Hinkley & Morris' account, was returned to him, and no change was made in the bank's books or his; but both were left as when the check was first deposited, as the entries had not as yet been disturbed.

The arrangement effected between Hines and Veazey, in that interview which Hinkley did not hear, was that Veazey would alter the signature to the check by appending Mr. Williams' name; and that the deposit should be so changed as to stand in the name of both trustees, so that the check could be *properly* charged to that fund. Hines said, he supposed he was bound by the Court's order

to recognize Veazey alone in the endorsement of the check on the Mechanics' Bank; and he produced the copy of that order, which Veazey left when he deposited the check, to the President of the Mechanics' Bank; but Mr. Baldwin, its President, did not take the same view and refused to honor the check in that shape. Hines then gave the Mechanics' Bank a cashier's check on his bank to cancel the allowance of the Justis check against the Mechanics' Bank, at the clearing house; and Mr. Justis took a cashier's check from the Mechanics' Bank for the same amount as the rejected check, which he deposited in the Manufacturer's Bank to the joint credit of Williams and Veazey trustees, and took up the other check.

There was already an account opened in that bank, to the joint credit of Williams and Veazey trustees, by the deposit of $500 on the 4th of June, 1886, and strangely enough, and why, the cashier Hines says he cannot explain, this account was simply entered on the books as void; and the deposit of the 4th of June of $500 was added to the new account opened in the joint names of Williams and Veazey, trustees, by the Justis deposit. Veazey closed also the account in his name as sole trustee by his check to the bank. The Union Bank was notified that the check was all right, and notified Mr. Hinkley, who sent his client his money. When the Manufacturers' Bank sent word to the Union Bank that Mr. Veazey's check was all right and good, the Hinkley check from Veazey was returned by the messenger to the Manufacturers' Bank where as he had promised Hines he would do, Veazey added the name "E. Calvin Williams, trustee, per I. Parker Veazey," as a drawer of the check to Mr. Hinkley; so that it could be carried as a formally correct credit to the bank as a disbursement from the Bull trust fund. In this way, on the sixteenth day of July, 1886, the misapplication of more than fourteen thousand dollars of the Bull estate trust funds was accomplished, and the same was appropriated

to the payment of a claim against the Gazette Publishing Company which had no connection whatever with the Bull estate.

In September, 1886, when Mr. Williams returned from his trip abroad, the breach of trust by his co-trustee was discovered. He reported the same to the Court, and Mr. Veazey was removed and the appellant Moore was appointed in his place. The trustees were then authorized, by order of Court, to institute such proceedings as they might be advised were necessary and proper for the recovery of the fund which had been improperly paid away and misapplied.

This bill, which was filed against Veazey, the Manufacturers' National Bank and William H. Swift, alleged the entire insolvency of Veazey, and his inability to make good the funds which he had misappropriated, and charged that both the Manufacturers' National Bank and Wm. H. Swift, were answerable to the trustees for the amount of the Bull estate which the former had paid out on the check of Veazey, and the latter had received. The decree of the Circuit Court held Veazey and Swift liable, and declared Veazey's primary liability; but it dismissed the bill as against the Manufacturers' National Bank. Swift appealed from the decree against him, and the trustees appealed from the decree so far as it dismissed the bill as against the Bank.

The appeals were heard together, and the views of the respective counsel were presented with great clearness and force. Having examined all the authorities cited by counsel and very many which were not cited by them, we have reached the conclusion, that the learned Judge who decided the case below erred in dismissing the bill as against the Manufacturers' National Bank, but properly held the other defendants bound. So far as the Bull estate is concerned, and its trustees, we think the Manufacturers' National Bank is equally bound to see the fund of that

estate, improperly, appropriated through its aid, made good. The question in *this case* is not one of primary or secondary liability, but whether all who have participated in any degree or way in bringing about the wrong should not be compelled to see it righted. Therefore, for the purposes of this decision it is not necessary to decide, and we do not determine, as between the Manufacturers' Bank and J. W. Swift, who was most in fault, or on whom the loss must ultimately fall; the rule being as laid down by the Master of the Rolls in *Wilson vs. Moore*, 1 *Mylne & Keene*, 146, that "all parties to a breach of trust are equally liable, and there is no primary liability."

It is the well settled law, that whenever a party has obtained money which does not equitably belong to him, and which he cannot in good conscience retain as against the person who is equitably entitled to it, he will be held as holding it for such person who is rightfully entitled to it. If it be trust property, equity impresses the trust upon it in the hands of the transferee, and " renders him liable to all the remedies which may be proper for enforcing the rights of the beneficiary." "This rule forms the protection and safe-guard of the right of beneficiaries in all kinds of trust;" and enables trust property to be followed into the hands of all subsequent holders, who are not in the position of *bona fide* purchasers for value without notice. 1 *Perry on Trusts, sec.* 217, *et seq.;* 2 *Pom. Equity*, 620–621 ; *George's Creek Coal and Iron Co. vs. County Comm'rs of Alleghany Co.*, 59 *Md.*, 259.

Swift cannot be regarded as " a *bona fide* purchaser without notice." He was the creditor of the Gazette Publishing Company, and of its funds in the hands of Veazey its trustee. As such creditor he received payment from funds belonging to the Bull estate ; and from none belonging to the Publishing Company. The general rule is that an antecedent debt does not form a valuable consideration in a case of this kind, so as to make the creditor, who is paid

from wrong funds, a purchaser without notice. 2 *Pom. Eq.*, 622, and authorities cited. Where the property is not "ear marked;" as where the payment is made in *money proper*, it has been held that the taker *without notice* gets it discharged of the trust. *Stephens vs. Board of Education*, 79 *N. Y.*, 183; 2 *Pom. Eq.*, 622. But if that be the law, which we do not decide, this case is free from the difficulty of identification on which it must rest. The payment was made by *check* on a fund not liable for the debt it paid. That check is traced back with absolute certainty into the trust account of the Bull trustees, where the Bank credits itself with its payment. That trust money may be followed into any hands where it has gone erroneously was not questioned, as we understood Swift's counsel; but it was contended that inasmuch as this check was given by Veazey as sole trustee, as he was of the Gazette Company, and was so received by Hinkley for Swift, and deposited in the Union Bank, and in that form was paid to the Union Bank by the Manufacturers' Bank on which it was drawn; and inasmuch as Hinkley did not know it was not the money of Swift's debtor in Veazey's hands, that the Manufacturers' National Bank must be held as having admitted that Veazey had such money in their hands, though in fact he did not have; and that in paying that check as drawn, the bank must be held to have paid it with its own money, as if it was really Veazey's debtor through proper deposit; and as a consequence that Swift cannot be made to return the money so received. As respects this suit, that argument is more ingenious than cogent. If the bank had promptly recognized its mistake in undesignedly, yet culpably, aiding in the breach of trust, and had restored the money to the Bull trust, and this was its suit against Swift for reimbursement; or, if Swift had repaid the money and was suing the bank, that argument might be regarded as more applicable and more forcible, and then the question also would arise whether

Swift *vs.* Williams and Moore, Trustees.

Hinkley as the attorney of Swift had enough information to put him on inquiry and charge Swift with notice. But as this is a suit for money which has been paid to Swift from an estate against which he had no claim, and from which he was not entitled to be paid ; and which he has really received in mistake, so far as he is concerned, it seems to us to be wholly immaterial whether he or his counsel had actual or constructive notice of the fact that the money paid was not such money as he was entitled to have paid to him. We need not therefore now consider the effect of the statement of Mr. Hines as to what he said to Hinkley at the Union Bank on the 16th of July, which Hinkley does not remember ; and in fact denies, touching the change of conditions of the deposit in the Manufacturers' Bank. Whatever question there might be upon that testimony, whether Swift should be visited with the consequences of statements his counsel did not understand, if made, and did not remember ; and be charged with knowledge, or that which is equivalent to it, negligence after being put on inquiry ; in our view we are relieved from considering it ; for we do not think, as we have already said, that as between Swift and the representatives of the Bull trust it is material whether he had knowledge or not.

If as between him and the Manufacturers' Bank, the latter would be estopped, as his counsel contends, from saying it was not funds he was entitled to retain ; still, as against the representatives of the Bull trust he cannot be allowed to retain that which was paid to him, in reality, from a fund on which he had no claim, and which was charged against that fund and no other ; and was not intended by the drawer of the check to be charged against any other fund. Swift will be in no worse position than if it had not been paid him, for although he may have given a release to Veazey as trustee of the Gazette Publishing Company, if the consideration for that release fails, he is

remitted to his position before executing it, with all the remedies open to him on Veazey's bond as trustee of the Gazette Publishing Company. Whatever the law may be as between him and the Bank, in this suit he must be treated as if the Bank was as insolvent as the defaulting trustee is. The Bull trust must not suffer for his benefit.

The bank by its counsel contends that Swift has received money that does not belong to him, which he should return; and that the bank is in no way answerable for it; and has been properly exonerated by the decree, under review. By dwelling upon the equitable aspect of the case, as against Swift, and the law in such case as against him, the real participation of the bank in accomplishing the wrong to the Bull estate has been pressed out of view. Reliance also has been placed upon the difference which the Supreme Court says, in *National Bank vs. Insurance Company,* 104 *U. S.,* 63, exists between a trust fund ordinarily held as such, and a trust fund kept in bank by the trustee depositor to be checked against. The Court there says "the contract between the bank and the depositor is, that the bank will pay according to the checks of the latter, and when drawn in proper form the bank is bound to presume that the trustee is in the course of lawfully performing his duty, and to honor them accordingly." This is and ought to be the law; but the facts of this case do not bring the bank within its protection; and it is not entitled to claim exemption from liability under its operation. The very check with which this account was opened was endorsed to the bank by one only of two trustees, to whom by special endorsement it was made payable. An account was opened in the name of Veazey as if sole trustee with this check, when at that very time an account was already standing on the bank's books in favor of both trustees jointly, by a deposit of $500, on the 4th of June preceding. The bank was thus notified in the inception of the transaction, that the funds deposited were trust

funds of which two trustees were the custodians and managers. It is true that at the time of the deposit, Mr. Veazey presented to the bank a copy of the Court's order already recited, and the bank was, no doubt, as its cashier testifies he did, relying on that order as binding on the bank. That order, however, gave Veazey no authority to pay away the funds; and it and the check notified the bank that the money paid by the check was purchase money for a trust estate, which in the nature of things could not be immediately paid away. And when the National Mechanics' Bank refused to honor the check, as endorsed, notwithstanding the Court's order which was also exhibited to its President, the Manufacturers' National Bank seemed to see its error and caused the deposit to be changed on its books. The account which was opened in the name of Veazey as trustee was closed, as already stated, by his check for the full amount of the Justis check, and this was done notwithstanding there then was, to the knowledge of both Veazey and the bank, an outstanding check in favor of Mr. Hinkley for more than half of that account as it then stood charged, and which could properly only be charged up against the unchanged account. Still the Union Bank was notified that this outstanding check in favor of Mr. Hinkley, and which it held, would be paid. It in turn, as stated heretofore, notified Mr. Hinkley to the same effect, and he paid his client.

The Manufacturers' National Bank knew that this Hinkley check drawn by Veazey alone could not properly be paid from the joint deposit, or the Bull fund, and so understanding paid it, and then had it altered by *the addition of Mr. Williams' name to the check "per Veazey trustee,"* for the express purpose of enabling the same to be charged to the joint trustee account. Being altered it was then charged up against the Bull fund in the hands of both trustees as the new account opened stood on the bank's books.

Upon what principle the bank is to be exculpated from participation in this transaction, and exonerated from liability because of it, we do not see. The learned Judge has filed no opinion, and we do not know by what reason-. ing he reached his decision, in which we cannot concur. We do not suppose that the officers of the bank wilfully participated in doing this wrong, and we. did not understand counsel so to insist; but that they were guilty of such negligence in failing to make inquiry, and in not following up the matter and learning the true state of facts, as it would have done had they heeded the notice which was given them, that there was something irregular being done, as to charge them with the knowledge of that which would have been obtained by proper diligence, cannot be doubted.

The conclusions we have reached, after the most thorough examination into .the authorities seem to be fully sustained by them. That the check having the signature of but one trustee where the fund deposited belonged to several, is. not good as against the fund is very clear. In *Grant on. Banking and Bankers*, 65, it is laid down that in such case each trustee must sign, or the check may be refused payment, and the banker will not be discharged if he does pay it; unless subsequent to the deposit the drawer becomes solely entitled. *Morse on Banking*, 290, says "if the deposit is placed to the credit of divers persons *as trustees,* the signature of all is indispensable to the validity of the check." In *Jones vs. Stephenson, et al.,* 1 *Moody and . Robinson,* 145, Lord TENTERDEN says, to hold otherwise "would defeat the very object of paying the money in jointly." *Husband vs. Davis,* 10 *Common Bench,* 645, and *Stone vs. Marsh, Ryan & Moody,* 364, may be cited for the same principle. In this case, not only was the absence of one trustee's name notice to the bank that something might be wrong, but without heeding it, the bank actually aided in perfecting the wrong, by having the additional

name added after the check in its *original form* was paid. Authorities are abundant to show that the addition of a new name as maker without assent changes its character and discharges that not assenting. *Lunt vs. Silon*, 5 *Mo. App.*, 186; *Dietz vs. Haider, et al.*, 72 *Ind.*, 208; *Wood vs. Steele*, 6 *Wallace*, 80. Without explaining to the Union Bank what the difficulty was, it informed that bank that the check, as passed to it with none but Veazey's name signed to it, was good; and that bank and its depositor acted on that information; and then the Manufacturers' Bank caused its form and signature to be changed; thus making the check an entirely different thing from what it was when given to Mr. Hinkley and deposited by him in his bank to his credit. Had it been in the shape it bore when the bank charged the account of Veazey and Williams with it, it cannot be doubted it would have been refused by Hinkley, and the misapplication would not have been effected. In the face of all that the bank had before the eyes of its officers its *culpable* negligence cannot be doubted.

In *Commercial and Farmers' Bank vs. First National Bank*, 30 *Md.*, 27, this Court decided that the law imposed on the bank the obligation of certainly knowing the signature of its depositors appended to checks drawn on the bank, and if it paid a check, the signature to which was forged, as was done in that case, the bank must bear the loss, unless it was misled into the error by the conduct of another amounting to *mala fides*, by which the loss might possibly be shifted on to the misleading person. If the bank is bound to know the signature is genuine, it must also be bound to know when the word "trustee" is added that the drawer is such trustee as is authorized to draw that check. This would seem to be a necessary corollary of the other rule.

In *Third National Bank of Baltimore vs. Lange, et al.*, 51 *Md.*, 144, this Court decided that the addition of the word

"trustee" after a name gave notice of a trust, and approved the law laid down in *Shaw vs. Spence*, 100 *Mass.*, 382, where it was decided that the addition of the word "trustee" in certain stock certificates gave notice that they were held in trust, and put a party taking the same, upon notice, and imposed on him the duty of inquiry from which if he abstained, he neglected at his peril.    If it be so in such case there is no possible reason why the same rule should not apply to the addition of "trustee" after the signature to a check, and should not put upon the party honoring the same the imperative duty of being certain that the check has been properly drawn against the fund—from which he pays it.    We do not mean by this to say that if Mr. Veazey had sole trustee funds on deposit against which that check appeared to be drawn, the bank would be bound to know that Mr. Hinkley properly represented a claim against that estate, for in that case the check would be in proper form, and would fall under the distinction noted by Justice MATHEWS in 104 *U. S.*, 63, already cited.    But here was a check signed by one trustee only, when the bank knew he had no sole trustee funds there, and that the account in the bank which had been opened on that theory, was opened in error ; and had caused a proper account in favor of *both trustees* to be opened, and yet the bank failed to inquire whether this check given by the drawer as sole trustee was properly chargeable to that fund as correctly opened, but *assuming* that it was, paid it as drawn, and then caused it to be changed by the addition of another signature, so as to become a proper charge in form against that fund as it was not in the form in which given and really paid.    Being notified that trust funds were being paid away through that check, and that the check was not in form to be a proper charge against the fund they knew it was to be paid from according to the intention of Veazey, they cannot escape the consequences of their neglect to inquire into the matter, which

resulted in the misappropriation, which it cannot be doubted would never have been accomplished if the bank had done its whole duty.

Reference has already been made to the order of Court on which the cashier said the bank was relying as obligatory on it. It was brought to it by the person making the deposit, and, naturally enough perhaps, did mislead the officers of the bank. But it was not an order affecting the bank in any way. It did not, as before stated, direct the disbursement of any of the money, it authorized Veazey to receive. It is an unbending rule in equity, of very ancient authority in this State, that a trustee cannot dispose of trust funds in his hands without the previous and express sanction of the Court. *Tilly vs. Tilly,* 2 *Bland,* 425—*Brantly's Edition.* This the bank was bound to know, and must be presumed to know. *Shaw vs. Spencer,* 100 *Mass.,* 382; *Third National Bank of Baltimore vs. Lange, et al.,* 51 *Md.,* 144. The petition upon which that order was passed, and of which the order gave notice, asked that the disposal be made according to an audit to be made and which should not be objected to. The bank certainly failed to follow up the inquiry to which it was most suggestively put.

For additional authorities in support of and controlling this decision we refer to *Magruder vs. Peter,* 11 *G. & J.,* 203; *Baynard vs. Norris,* 5 *Gill,* 483; *Winchester & Lemmon vs. Balto. & Susq. R. R. Co.,* 4 *Md.,* 239; *Stewart & Duffy, Trustees vs. Firemen's Ins. Co., et al.,* 53 *Md.,* 578; *Abell vs. Brown,* 55 *Md.,* 217; *Ellis vs. Horman,* 90 *N. Y.,* 473; *Oliver vs. Piatt,* 3 *Howard,* 401; *Kelsey & McIntyre, vs. Hobby & Bond,* 16 *Peters,* 271; *In re Hallett's Estate, L. R.,* 13 *Ch. Div.,* 696.

The decree in respect to Veazey and Swift was entirely right. The only error we find to be corrected is that the Manufacturers' National Bank should have been made conjointly liable for the restoration of the money to the

17      

Bull trust fund.   So far therefore as the decree appealed from dismissed the bill as to it, the same must be reversed, and the cause will be remanded to the end that the decree may be so modified as to make the Manufacturers' National Bank also liable.   Upon the appeal of Swift the decree must be affirmed.   Upon the appeal of the trustees Williams and Moore the decree must be reversed.

*Reversed and remanded.*

(Decided 5th January, 1888.)

BRYAN, J., dissented, because he thought the Manufacturers' National Bank of Baltimore solely liable, and Swift not answerable at all.