HOLLY v. DOMESTIC & FOREIGN MISSIONARY SOC. OF THE PROTESTANT EPISCOPAL CHURCH IN THE UNITED STATES OF AMERICA et al.

(Circuit Court of Appeals, Second Circuit. March 1, 1899.)

No. 64.

1. BILLS AND NOTES—CHECKS—BONA FIDE HOLDER—EQUITIES.
 One who takes a check innocently in payment of an antecedent debt of the drawer is a bona fide holder for value, and acquires a perfect title to the proceeds thereof on collection, which cannot be subordinated to the equity of a third person, claiming that part of the deposit which was used to pay the check was trust funds.

2. MISAPPROPRIATED TRUST FUNDS—INNOCENT HOLDER—RECOVERY BY OWNER.
 Plaintiff intrusted money to his agent, to be applied to certain purposes, but the agent fraudulently deposited it in a bank, in his own name, with other funds of his own, and afterwards paid out a large portion thereof on a legacy to defendant, who had no notice of the trust. *Held*, that defendant was an innocent holder of the money for value, and that plaintiff was, therefore, not entitled to recover the same from it.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Herbert Barry, for appellants.
Arthur M. Burton and Cephas Brainerd, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a suit brought to recover certain moneys received by the defendant the Domestic & Foreign Missionary Society, etc., through the check of one Thompson, upon the theory that the check was paid by the misappropriation of a trust fund in Thompson's hands belonging to the complainant. The facts are these: The complainant employed Thompson as an attorney and conveyancer about the purchase of certain real estate, and June 19, 1890, delivered to him a check for $12,000, with instructions to apply the proceeds to the payment of the purchase money. Instead of doing so, Thompson used the check as a credit item in his account with the Union Trust Company, and misappropriated the proceeds by

checks drawn by him on the trust company. Among these checks was one dated June 20, 1890, for $15,577, payable to the order of the missionary society.

Thompson was one of the executors of the estate of James Saul, under whose will the missionary society was a legatee. A decree of the probate court having jurisdiction in the premises had been entered in November, 1889, settling the accounts of the executors, and ordering payment of the legacy. Thompson's co-executor was a clergyman, and had left the administration of the estate and the control of the funds exclusively to Thompson; and the missionary society was cognizant of the facts. In the spring of 1890 the missionary society became urgent for the payment of the legacy, wrote several letters to Thompson about it, and also wrote to his co-executor. The latter informed the missionary society, in substance, that the delay in paying the legacy was solely attributable to Thompson's dilatory disposition. His patience finally seems to have become exhausted, and he insisted that Thompson should produce the securities of the estate for his examination, and fixed a day for that purpose. On that day, before the time appointed, he received a note from Thompson, stating that he was going to New York to settle with the missionary society. The next day Thompson called at the office of the missionary society, and delivered to its treasurer the check for $15,577, the amount being the sum due as principal and interest upon the legacy. The missionary society accepted the check in payment, receipted for the amount to the executors, and shortly thereafter collected the check. According to the finding of the court below, this check was, to the extent of $10,028, paid by the Union Trust Company out of the moneys realized from the check of the complainant. The court below decreed against the missionary society for that amount in favor of the complainant. 85 Fed. 246.

The proofs do not disclose any fact or circumstance tending to show that the missionary society supposed, when it received Thompson's check, that the check was not drawn against his own funds. The circumstance that the payment was made by his individual check, and not by that of the executors, was suggestive of irregularities in his conduct as an executor, but it does not seem to have created any suspicion of his integrity, and was not calculated to do so. There was no impropriety in his paying a debt of the estate with his own funds, if he saw fit to do so. The missionary society undoubtedly received it in entire good faith. Upon these facts we are constrained to conclude that the complainant was not entitled to a decree.

The familiar doctrine that the beneficial owner of trust property which has been misappropriated by his trustee is entitled to follow it in a court of equity through any transmutations in which it can be traced, and reclaim it in its new form, not only as against the trustee, but also against any other person who has no better equitable title, applies to money which has been intrusted by a principal to his agent for a specific use, and which the latter has diverted. In the case of a principal, or of any person who has a legal title, the money is recoverable at law by an action for money had and received

(U. S. v. State Bank, 96 U. S. 35), and the interposition of equity is unnecessary. The old notion that money cannot be thus followed, because it has no earmarks, has been exploded; though in many cases where it has been mingled with other moneys of the wrongdoer, or been converted into other property, the practical difficulty of identifying and following it is insuperable. Knatchbull v. Hallett, 13 Ch. Div. 696; McLarren v. Brewer, 51 Me. 402; Bresnihan v. Sheehan, 125 Mass. 11; Van Alen v. Bank, 52 N. Y. 1; National Bank v. Insurance Co., 104 U. S. 54. Upon this doctrine, undoubtedly, the complainant was equitably entitled to follow his money into the hands of the Union Trust Company, and reclaim it, until it had been withdrawn by Thompson's check upon that company; and to follow it again through Thompson's hands into the possession of any other person receiving it as a volunteer or with notice of complainant's rights, and reclaim so much of it as could be traced into the check. But the missionary society was not a volunteer. It received the money innocently in discharge of a debt, and good conscience did not require it to restore the money to the complainant on subsequent information of his rights. Neither in equity nor at law in an action for money had and received can he whose trust moneys have been perverted prevail against the title of one who has acquired them bona fide and for value. He who receives money or acquires negotiable paper in payment of a debt is a holder for value, and if he receives the money innocently, or acquires the commercial paper before its maturity, and without notice of any infirmity, has a perfect title, which cannot be subordinated to the equities of any third person.

In the action for money had and received, which is controlled by principles of equity, and in which the general rule is that the plaintiff is entitled to recover money, which, ex æquo et bono, the defendant ought to refund, there are many illustrations of the doctrine that a defendant who has received money innocently in payment of a debt is under no obligations to restore it, notwithstanding, as between the plaintiff and the person from whom the defendant received it, it ought to be regarded as the money of the plaintiff. In Insurance Co. v. Abbott, 131 Mass. 397, the plaintiff, an insurance company, paid a loss upon the order of one Abbott, the assured, to persons to whom the latter was indebted, and, upon discovering that the loss was fraudulent, brought the action against them to recover back the amount. The court held that the action would not lie, Gray, C. J., saying: "These defendants hold no money which, ex æquo et bono, they are bound to return either to Abbott or to the plaintiffs." In Miller v. Race, 1 Burrows, 452, Lord Mansfield said: "Money shall never be followed into the hands of a person who bona fide took it in the course of currency, and in the way of his business." In Mason v. Waite, 17 Mass. 563, the court said: "It would be mischievous to require of persons who receive money in the way of business, or in the payment of debts, to look into the authority of him from whom they received it." In Bank v. Plimpton, 17 Pick. 159, it was held that money of a principal, misappropriated and lent by his agent to a creditor, the agent being indebted to the creditor in a larger sum,

and the creditor receiving the money bona fide, could not be reclaimed by the principal, as in a suit by the principal the creditor could set off the agent's debt. The court said that in respect to money the owner could not follow it, "not only because money has no earmarks, but because a different doctrine would be productive of great mischief." In Justh v. Bank, 56 N. Y. 483, the court stated that, if money which had been received in the regular course of business can be followed, "the transaction of business must ·be stopped, for no security and no precaution can guard the receiver from responsibility." In Stephens v. Board, 79 N. Y. 187, the court used the following language:

"It would introduce great confusion into commercial dealings if the creditor who receives money in the payment of a debt is subjected to the risk of accounting therefor to a third person who may be able to show that the debtor obtained it from him by felony or fraud. The law wisely, from consideration of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests the title in the holder as to third persons dealing with him, and receiving it in due course of business, and in good faith, upon a valid consideration. If the consideration is good as between the parties, it is as good as to all the world."

Ever since the case of Swift v. Tyson, 16 Pet. 1, it has been the law of the federal courts that the transferee of commercial paper, who receives it in payment or as security for an antecedent debt, is a holder for value. Railroad Co. v. National Bank, 102 U. S. 14; McMurray v. Moran, 134 U. S. 150, 10 Sup. Ct. 427. It is immaterial, therefore, whether the check received by the missionary society is treated as money or as commercial paper. In either form, as it was taken bona fide, and in payment of a debt, no part of the amount can be reclaimed by the complainant.

The following adjudications may be cited in support of the general proposition: State Bank v. U. S., 114 U. S. 401, 5 Sup. Ct. 888, was a case in which, by the connivance of a clerk of the office of an assistant treasurer of the United States, one Carter unlawfully obtained from that office money belonging to the United States, and to replace it delivered to the clerk money which he obtained by fraud from the plaintiff, the clerk having no knowledge of the fraud. The court held that the United States was not liable to refund the money. In Goshen Nat. Bank v. State, 141 N. Y. 379, 36 N. E. 316, the defendant, in payment of moneys due from a county treasurer, received a draft wrongfully and fraudulently drawn by him as cashier of the plaintiff upon another bank, the plaintiff's correspondent. In an action to recover the amount of the draft which the plaintiff had been compelled to pay to its correspondent, the court held that. as the defendant had received the draft in good faith, the plaintiff could not recover. The court said: "The interposition of the draft makes no difference in principle after it has been paid. It is then the same as if the money had been originally paid, instead of an order given for its payment." Hatch v. Bank, 147 N. Y. 184, 41 N. E. 403, was a case in which a bank in good faith, in the ordinary course of business, and without notice, had received from a customer checks of third parties, obtained by his unlawful pledge of the securities of the plaintiff, and the bank, pursuant to a continuing agreement

with the customer to that effect, applied the checks in payment of an existing indebtedness against him. The court held that the bank was not liable to refund the money due to the owner of the securities. The court said: "If, therefore, Smith had come with the money, and with it had paid his debt over the counter, the amount could not have been recovered by the plaintiff, although admitted to have been actually the proceeds of the stolen certificate;" and added by Finch, J.: "I think the situation was not at all changed because the debtor came with Ferris & Kimball's check, which the bank collected."

The case of Swift v. Williams, 68 Md. 236, 11 Atl. 835, is cited by the appellee as an adjudication in his favor, and as sanctioning the proposition that the equitable owner of misappropriated trust funds can follow them into the hands of a creditor who has taken them innocently in payment of a debt. We have been unable to find any other adjudication to this effect, and we regard the decision as a departure from principle and authority.

The decree is reversed, with costs, and with directions to the court below to dismiss the bill.