## CHANCERY COURT OF THE CITY OF RICHMOND

Life Insurance Co. of Va.

v.

American National Bank of Richmond

January, 1919

By JUDGE WILLIAM A. MONCURE

By false representations, fraud and forgery William B. Pizzini on September 21, 1915, obtained, in the manner and under the circumstances hereinafter stated, from the Life Insurance Company of Virginia its check in the following words and figures:

Life Insurance Company of Virginia.
Richmond, Va., Sept. 21, 1915, No. A 5579.
Pay to the order of W. B. Pizzini Co. Agents
$17000.00.
Seventeen thousand and No/100 Dollars.
Mortg. Mrs. Mary D. McCann.
Life Insurance Company of Virginia,
Algie S. Hurt, Vice President.
Countersigned by B. H. Walker, Asst. Secretary.
Planters National Bank,
Richmond, Va.

This check was then endorsed as follows: "Wm. B. Pizzini Co., Agents by Wm. B. Pizzini, Treas." and being so endorsed it was taken by Wm. B. Pizzini on Sept. 21, 1915, to the American National Bank and deposited to the individual credit of Wm. B. Pizzini, who thereafter at different times checked all of it out. At the time of his departure from Richmond, about the last of December, 1916, as a

fugitive from justice, and for a long time prior thereto, Wm. B. Pizzini seems to have had the confidence of many persons owning and dealing in real estate, and those lending money thereon, including several of the Richmond banks and the plaintiff. His criminality in the matter in controversy in this suit was discovered only after his fleeing the country.

For more than fifteen years prior to the acts complained of Pizzini had been engaged in the real estate business as treasurer and general manager of the Wm. B. Pizzini Co., a corporation organized in 1898 for the purpose of conducting a real estate business such as buying and selling for others, negotiating loans, renting out property, collecting rents, etc.

The Wm. B. Pizzini Co. was a very close corporation: for at least ten years F. A. Pizzini, wife of W. B. Pizzini, was *president and the only stockholder*, there being but one share issued and that for $1000.

In recent years at the annual meeting of the directors, a motion of F. A. Pizzini carried whereby the profits of the previous year were allowed to Wm. Pizzini the general manager as compensation for his services. It is shown in the evidence of W. E. Word, who was in the employment of the company for a number of years, and its secretary, that Wm. B. Pizzini was regarded as the "sole owner of the company -- he was the company. All orders were given by him. Everything was done by his direction."

There was a resolution of the board of directors to the effect that the treasurer was authorized to sign all checks, notes and contracts of the company, and to endorse the same and deposit the funds of the company in such bank as he may select to the credit of the company, to be drawn out by his checks as treasurer.

Under the will of Andrew Pizzini, Sr., the grandfather of Wm. B. Pizzini, house and lot No. 819 East Broad Street passed to Charles McCann trustee for Mary D. McCann (the testator's daughter) with power in the trustee to sell or encumber the same upon the written request of Mary D. McCann attested by two witnesses. This property was being rented out for the owners by the Pizzini Company, and in September 1915 so far as the records showed the title was vested in Charles McCann trustee for Mary D. McCann as just stated. The fact, however, was (though unknown

to complainant and not discovered until after Wm. B. Pizzini fled the country) Charles McCann died in 1905 and Mary D. McCann died in 1914 intestate, leaving four children, now defendants to the bill.

On September 8, 1915, Wm. B. Pizzini presented to the Life Insurance Company a written application purporting to be signed by Charles McCann, trustee, and Mary D. McCann (though at that time both were dead) for the loan of $17,000 to be secured by trust deed on the house and lot 819 East Broad St. On this application the name of the broker was given as Wm. B. Pizzini Company. The application was acted upon favorably; the title to the property was examined by the attorneys for the insurance company and found satisfactory so far as the records showed and vested in the applicants for the loan. The form of trust deed and principal and interest notes were approved by the attorneys and delivered to Wm. B. Pizzini to be executed. Pizzini was a notary public and duly returned the papers executed and acknowledged before him for recordation.

The papers appearing to have been executed by the persons represented were delivered to the complainant and the check as described above was delivered to Wm. B. Pizzini. The semi-annual interest notes of $570 each falling due in March and September 1916 were paid to the insurance company by checks of the Wm. B. Pizzini Company drawn by Pizzini as treasurer.

In the three years just preceding Sept. 20, 1915, the insurance company had made six loans aggregating $66,000 through Pizzini, and these loans had proven satisfactory, so that it seems to have placed .much confidence in Pizzini and his acts.

After Pizzini's flight to parts unknown his criminality was found out, the amount lost by his victims aggregating, it is currently reported, some four or five hundred thousand dollars.

In these circumstances the complainant has filed its bill in equity against the American National Bank, the Wm. B. Pizzini Company, Charles A. McCann, H. Eugene McCann, Gulielma McCann Devenney and Elizabeth McCann Davidson praying that the American National Bank be required to account for and pay to the complainant the sum of $17,000, with interest thereon: that it be enjoined

from paying the same or any part thereof to the Wm. B. Pizzini Company and for general relief.

The bill states no cause of complaint against the last four defendants above named, prays for no special relief against them, and besides they have sufficiently shown in the record that they were ignorant of the entire transaction, and neither directly or indirectly participated in it, and received no benefit from it; therefore as parties to this suit they may be very properly disregarded and the suit dismissed as to them.

By a stipulation of counsel filed in the record the following is agreed as part of the evidence in this suit:

1. That the American National Bank of Richmond, as a matter of fact had no knowledge of the minutes of the Wm. B. Pizzini Company quoted in the bill of complaint.

2. That the defendant bank had no knowledge of the diversion of the funds in the bill mentioned other than that conveyed on the face of the transaction.

3. That when the check was presented by the American National Bank to the Planters National Bank and paid by the latter, it was not disclosed that the proceeds were to be placed to the personal credit of Pizzini to be checked out by his individual checks.

4. That the Wm. B. Pizzini Company is insolvent and out of business; that Wm. B. Pizzini is insolvent and a fugitive from justice.

It is the claim of the complainant:

1. That the check so endorsed and deposited with the American National Bank was by the latter collected of the payee bank for and on account of the Wm. B. Pizzini Company, agents, and that no part thereof has ever been paid by the American National Bank to the Wm. B. Pizzini Co., or checked out by it in the only manner it could rightfully and properly be checked out, that is by checks of the company drawn by its treasurer.

2. That the fund represented by said check, to-wit: $17,000 constituted a trust fund clearly and distinctly so ear-marked by the manner in which the check was made payable, and the statements appearing on the face thereof, that the same is payable to the heirs at law of Mary D. McCann, deceased, if they choose to claim it; and

if they refuse to claim it, the fund must be returned to the complainant.

The American National Bank has demurred to and answered the bill. In the answer it denies any liability to complainant and denies any knowledge of any of Pizzini's wrongdoing, disclaims having received any benefit, or profit from the transaction, other than the use of the money for the short time it remained to the credit of W. B. Pizzini.

As to the demurrer it will be overruled. It must be conceded that in suits brought to trace and recover a trust fund it is invariably held that equity has a natural and primary jurisdiction superadded to any legal right the suitors may have, and concurrent with them, and it is no bar that an action at law may have been sustained on the same state of facts. Perry on Trusts (6th Ed.) § 843; *Swift v. Williams*, 68 Md. 236, 11 A. 835 (1888); *Central Natl. Bank v. Com. & Mf. Co.*, 104 U.S. 54-63, 26 L. Ed. 693-698 (1881); *Nolting v. Bank*, 99 Va. 54 (1901); *Hanford v. Duchastel*, 93 A. 586-589 (N.J. 1915).

The claim of plaintiff that the words on the face of the check "Mortg. Mrs. Mary D. McCann," gave notice to the American National Bank of any fact connected with the transaction is without merit. These words were a memorandum of the drawer and for its benefit alone and did not give notice to the defendant bank. *State Bank v. Dodge*, 124 U.S. 333, 31 L. Ed. 458 (1888); *Duckett v. Bank*, 86 Md. 400, 39 L.R.A. 88 (1897); *First National Bank v. Kenney*, 116 Md. 24, Ann. Cases 1913B, 1337 (1911).

Now, section 56 of the negotiable instrument law is as follows:

> To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.

An affirmative answer to any one of the three questions now to be asked, would be decisive of this matter in favor of the insurance company: a negative answer to

all of them must be decisive of the question in favor of the defendant bank.

The questions are:

1. Has the defendant bank possession of the money in question, or any part of it?

2. Did the defendant bank receive the money from Pizzini with notice of the trust and apply it or any part of it to the payment of Pizzini's individual indebtedness to it?

3. Did the defendant bank so receive the money and aid Pizzini in wrongfully diverting it from complainant?

The evidence clearly shows that true answers to the questions are in the negative.

A chief contention of the complainant is that the word "agents" after the payee's name in the check furnished sufficient notice to the bank that the proceeds of the check constituted trust, or fiduciary funds, and the bank could not escape liability, if it allowed the Wm. B. Pizzini Company to use the funds otherwise than for the purposes of the trust.

In making such claim it loses sight of the fact that this money was stolen by Pizzini from the Life Insurance Co. of Va. There was no principal, or cestui que trust. The McCanns, the pretended principals, were dead. The Wm. B. Pizzini Company were not agents of any one to borrow that money. The name, as agents, was fictitious.

The result is axiomatic. If there was no agency (and there was none), the words "agents" after the payee's name in the check could not give notice to the bank of an agency, or trust, when none, in fact, existed.

> The weight of authority favors the rule that words denoting agency or official character, added to the name of payee of a negotiable instrument, are to be deemed as descriptive merely, and that the person named is individually the payee, and may make a sufficient transfer or sue on it in his own name. Words describing the official position of the payee may be designated as being mere description, such as agent, treasurer, president or manager. 8 Corpus Juris, page 173, § 294.

"The addition of the word agent to the name of the depositor is mere *descriptis personae,* and does not affect his right to withdraw the same." *Banks and Banking* (Michie), Section 130, citing *Nolting v. Bank,* 99 Va. 54 (1901); *Patterson v. Bank,* 130 Pa. 419, 18 A. 632 (1889). To the same effect see Morse on Banks and Banking, Section 604.

The check when deposited with the American National Bank was endorsed in blank; it was properly endorsed. There is no merit in the contention that because a resolution of the board of directors of the Wm. B. Pizzini Co. authorized the treasurer to sign all checks, notes and contracts of the company and endorse the same and deposit the funds etc. of the company to the credit of the company, the law imputes knowledge of such resolution to the defendant bank and to persons dealing with the company. It was no part of the charter of the Pizzini Company; it was a mere resolution of the board of directors and the bank had not actual knowledge of it. The check being endorsed in blank by the payee it passed like all other checks, so endorsed, by delivery. It was as if payable to bearer, and passed by delivery. It was in the possession of Wm. B. Pizzini, and for the purpose, at least of disposing of the check, he was the owner. He deposited the check with the defendant bank and told it to put the amount to his credit. This the bank did and thereby became the purchaser and owner of the check. What possible difference in law was there or could there have been, in what was done, and the situation if Pizzini had gone to the defendant bank and drawn the money on the paying side of the counter, and immediately deposited the money to his credit on the receiving side? If he had done the latter, the paying teller could not by such act know, nor even suspect, that he would do any wrong, and it is also true that the receiving teller would have no knowledge of the course the money so deposited came. The legal result of what he did is the same as if he had cashed the check and immediately deposited the proceeds.

"A credit given for the amount of the check is the same as if the money had been paid over the counter on the check, and then immediately paid back again to the account, or for the use for which the credit is given." Morse on Banks and Banking, § 451, citing, among others,

*Oddie v. Nat'l City Bank*, 45 N.Y. 735 (1871); *Nat'l Bank v. Burkhardt*, 100 U.S. 686 (1880); *Am. Bank v. Miller*, 229 U.S. 517, 57 L. Ed. 1310 (1913). For an interesting discussion on this subject see the court's opinion in *U.S. Fidelity & Guar. Co. v. First National Bank*, 18 Cal. App. 437, 123 P. 352 (1912).

> Upon the checks which were received by the administrator he had the undoubted right to draw the money, and if he chose, thereupon to deposit the money thus received to the credit of his own account, he had a perfect right to do so. What he did was nothing more than the equivalent of such action on his part. The money having gone into his own account was subject to be drawn out upon his personal checks which the bank could not refuse to pay. The question is entirely different from the one which would arise if after the deposit was made it was claimed as money of the trust, and the bank was notified of the claim before it was paid, but that is not the case. *Safe Deposit & Tr. Co. v. Diamond Natl. Bank*, 194 Pa. St. 334, 190 Pa. 334, 44 A. 1064 (1900).

In *Perry on Trusts* (6th Ed.), in a note to § 123 on page 180 the author says:

> It has been held in several cases that a bank is not liable to the beneficial owners of the trust funds from the mere fact that it places to the credit of the trustee's personal account, funds which it knows belong to him as trustee, where the depositor had no separate account as trustee. Such a deposit gives the bank no reason to believe that the trustee is acting or intends to act dishonestly, citing *Batchelder v. Central Nat. Bank*, 188 Mass. 25 (1905); *Safe Dep. & Tr. Co. v. Bank*, 194 Pa. St. 334 (1900); *Coleman v. Bucks & Oxon Union Bank*, 2 Ch. 243.

While the bank was held liable on the facts of the case of *Union Stock Yds. v. Gillespie*, 137 U.S. 411 (1890), the following language of Mr. Justice Brewer states the law for ordinary cases:

> We do not mean to be understood as implying that a bank receiving deposits from one whom it knows to be in the commission business receives every deposit in trust for the unknown principal. A bank is not sponsor for all its depositors, although it may know the character of their business. Its relations to its depositors are those of debtor; and, generally, in receiving and paying out money on the checks of its depositors, it discharges the full measure of its obligations. It is not ordinarily bound to inquire whence the depositor receives the moneys deposited, or what obligation such depositor is under to other parties. It is only when there gather around any deposit, or line of deposits, circumstances of a peculiar nature, which individualize that deposit or line of deposits, and inform the bank of peculiar facts of equitable cognizance, that it is debarred from treating the deposit as that of moneys belonging absolutely to the depositor.

To the extent of Pizzini's transaction at the American National Bank with the check, the facts in the case of *Kendall v. Fidelity Trust Co.*, 230 Mass. 238, 119 N.E. 861 (1918), are substantially alike; in affirming the decree dismissing the bill of complaint, among other things the court said:

> We are of opinion that the form of the checks and the fact that their proceeds were credited to Alvero's individual account are not sufficient to warrant a finding that the defendant had reason to believe that Alvero was acting dishonestly. There is nothing to show that the defendant in collecting the checks drawn upon and paid by the Merchants National Bank without objection had any reason to suspect that the depositor

was committing a fraud, or that the checks were not presented in good faith to the bank on which they were drawn. As the defendant had no interest in the deposit and never received any part thereof for the payment of the debt due to it, but credited all amounts so collected to Alvero's personal account, it can not be charged with constructive notice of the fraudulent conduct of the fiduciary. R.L. c. 73, Section 69, 72, 73; *Pratt v. Higginson*, 119 N.E. 661; *Newburyport v. First National Bank*, 216 Mass. 304; *Allen v. Puritan Trust Co.*, 211 Mass. 409-423; *Newburyport v. Spear*, 204 Mass. 146, 134 Am. St. R. 652; *Fillebrown v. Hayward*, 190 Mass. 472; *Batchelder v. Central Bank*, 188 Mass. 23; *Havana Central R.R. v. Knickerbocker Trust Co.*, 198 N.Y. 422-12 L.R.A. 1915-B 720; *Goodwin v. Am. Natl. Bank*, 48 Conn. 550; *Mott Iron Wks. v. Metropolitan Bank*, 78 Wash. 294; *Gray v. Johnston*, L.R. 3 H.L. 1.

The weight of authority is in accord with the view that if a bank, acting in good faith merely credits trust funds, knowing them to be such, to the personal account of the fiduciary it will not be liable if the latter misappropriates such funds. *Allen v. Puritan Trust Co.*, 211 Mass. 409. As the defendant cannot be charged with constructive notice of the fraudulent acts of Alvero merely because of the form of the checks and because the amounts collected thereon were deposited in his personal account with other funds deposited by him, it follows that there is no evidence that the defendant knew that he intended to misappropriate the funds and the defendant therefore cannot be held liable.

To the same effect, *Pratt v. Higginson*, 119 N.E. 661 (Mass. 1918).

In the case of *Gate City Bldg. Assn. v. Natl. Bank*, 126 Mo. 82, 27 L.R.A. 401, 47 Am. St. R. 633 (1894), the bank in which the check was deposited was held not liable where the general fiscal agent of a building and loan association, who, while not by its by-laws custodian

of its funds, was the custodian of its securities, and authorized to make its collections, and transact banking business, deposit checks payable to the order of the association, to his own credit, though by the by-laws of the association the treasurer was the only person who could pay out its funds.

In the case of *Batchelder v. Bank*, 188 Mass. 25 (1905), the court held that a depositor of a bank, who was not a creditor, and had a deposit account with it only to his personal credit, and deposited a check payable to him as trustee, that it could not be ruled as a matter of law, that such act was a dishonest act on his part, or that the circumstances gave the bank reason to believe that he was acting dishonestly so as to render it liable for the amount of the check.

The conduct of Pizzini in this entire transaction as shown by the record has been fairly and, it is thought, accurately given; but it must be remembered that none of his wrongdoings were known, and none even suspected, until more than a year after their commission. When known of, all of the money was gone and so was Pizzini.

For the above reasons, I do not think, as a matter of law, the defendant bank is liable, because it simply cashed the check for Pizzini, or, what is the equivalent, placed to Pizzini's personal credit the check when so presented and endorsed in blank, that is payable to bearer, and thereafter, without receiving part of the money, allowed it to be checked out by Pizzini personally.

As to the American National Bank, and the four children of Mary D. McCann, deceased, the bill must be dismissed. As to the Wm. B. Pizzini Company, though insolvent and out of business if a decree against it is desired, it may be allowed.