7 U.S. 249 (____)
3 Cranch 249
SARAH AND ABIGAIL SILSBY,
v.
THOMAS YOUNG AND ENOCH SILSBY.
Supreme Court of United States.

*253 Morsell, for plaintiffs in error.
*256 Harper, for the defendant.
P.B. Key, for the defendants.
*261 MARSHALL, Ch. J. delivered the opinion of the court.
This being a suit in chancery, brought by legatees claiming an account, in order to the payment of their legacies, and their bill having been dismissed without an account, the decree can only be supported, by showing that there are, in the hands of the administrator, no assets which ought to be applied to the purposes prayed in the bill.
The testator having bequeathed to each of his two sisters, Sarah and Abigail, who are the complainants, the interest on one thousand pounds sterling, and that being in arrears; and assets having come to the hands of his representative, the complainants are certainly entitled to an account, unless they have forfeited all pretensions to their legacies.
*262 The defendants say they have forfeited their rights,
1st. By a letter, selecting a particular debt in satisfaction of their legacy, which debt is lost.
2d. By their laches.
The better to understand the correspondence, which is relied upon, it must be recollected, that, by the will, the whole estate, real and personal, of the testator, was devised to executors and trustees, who were directed to place it out on public or private security, in such manner as should, in their judgment, best promote the interests of the legatees. The testator then directs, among other bequests, that his trustees shall set apart one thousand pounds sterling, for each of his sisters, the interest of which shall be paid to them during their natural lives, after which, the principal is to be divided between the children of each, if they should marry and have children, but is given to his nephew, Enoch Silsby, in the event of the first legatees' dying unmarried, or without children.
This duty of the executor and trustee, being thus plainly marked, he addressed a letter to the legatees, in September, 1791, in which he mentions an offer which had been made him, of a mortgage of 2,000l. the amount of the sums to be set apart for them, which he will take, if it meets their approbation. If the plaintiffs had taken this mortgage, and the title had proved defective, or the mortgaged property had been destroyed, they would, most probably, have forfeited all claims upon the estate of their testator, and would have been, at least, censured by the legatee in remainder, for having destroyed, by an improvident intervention in the management of the estate, his right to the principal sum, on their dying unmarried. Such an interference, on their part, was unnecessary, because the executor was authorised, by the will, to place the estate either on private or public security, as he should think most advantageous, and would have been particularly indiscreet, because they could neither judge of the validity of the title, nor of the value of the premises proposed to be mortgaged. To have intermeddled *263 with the subject would, therefore, have been in them a departure from propriety and common prudence, not to be accounted for, nor justified.
Under these circumstances, they say, "You mention an old friend of our dear brother's wishing to hire the 2,000l. on mortgage. We would willingly oblige him, but cannot. We choose to let it remain just as our brother left it."
To the court it seems, that this letter will admit of but one construction. It is a plain declaration, that they do not mean to intermeddle with the duties of the executor, but to leave him to perform them according to the directions of his testator. "We choose to let it," (the legacy of 2,000l.) "remain just as our brother left it," is plainly saying, that the legacy must remain on the foundation on which the will placed it. The construction which would convert these words into a declaration, that they chose the debts of their testator not to be collected, and that they chose to take upon themselves the hazard of the solvency of any particular debtor, whose debt should remain outstanding, or of the executor, if he should happen to collect it, is really too violent a distortion of them to be tolerated for an instant.
As little foundation is there for the allegation, that the rights of the complainants have been forfeited by their laches. The court can perceive no laches on their part. It was not particularly incumbent on them to incur the expense of inquiring into the manner in which the executor performed his trust, with respect to the estate at large. They received their interest regularly, and there was no circumstance to awaken a suspicion that they were in danger. On the residuary legatee, and on his father and natural guardian, it was more particularly incumbent to examine into the conduct of the executor, and though he may be perfectly excusable for not having done so, he cannot throw the loss on others, whose conduct has been perfectly faultless.
*264 The court is, therefore, clearly and unanimously of opinion, that the complainants have not forfeited their rights; and, consequently, that the decree must be reversed, and an account directed.
In considering the principles on which the account is to be taken, the court think it perfectly clear, that the specific pecuniary legacies must be set apart, before the defendant, Enoch Silsby, can be entitled to the residuum. The words annexed to the bequest of the residuary estate, which subject it to the same conditions with the bequest of the 1,500l. are understood, by the court, to relate to the condition of payment, at the age of 21, and to the limitations over, in case of the death of the residuary legatee, not to the question of abatement; and a residuum, ex vi termini, is that which remains after particular legacies are satisfied.
The court is also of opinion, that if there be not sufficient assets to satisfy all the specific legacies, the loss must fall exclusively on the 1,500l. given to Enoch Silsby, until that fund be exhausted.
It has been argued, that the words of the will limit this charge on that legacy to the contingency of an insufficiency of assets at the death of the testator. The words are, "It is my will and desire, that if the personal estate, and the produce arising from the real estate of which I shall die seised and possessed, shall not be sufficient to answer the several annuities and legacies herein before by me bequeathed, then, and in such case, I direct that the annuities and legacies shall not abate in proportion, but that the whole of such deficiency, if any there be, shall be deducted out of the said sum of 1,500l. herein before by me bequeathed to my said nephew, Enoch Silsby."
These words have undergone a very critical examination, and it has been contended, that the time at which the sufficiency mentioned in the will is to be determined, is fixed by the testator at his death, in like manner as if the expression had been, "if my estate shall not, at the time of my death, be insufficient," &c. But the words do not appear to the court to demand such an interpretation. The words, "the personal and real estate of *265 which I shall die seised and possessed," are no more in substance than the words "all my real and personal estate" would have been. They describe the subject, on the insufficiency of which an abatement of a particular legacy is to take place, but not the time when that insufficiency is to be tested. In the opinion of the court, that time is when the will is carried into execution, by the application of the funds to their object. If, when that application is made, a deficiency appears, "then, and in that case" it is, that the abatement is to take place in the specific legacy to Enoch Silsby.
This specific pecuniary legacy, being given to the same person to whom the residuum is given, and on the same terms, assumes completely the character of a residuary bequest, and the testator does not appear to have intended to give it any preference over the residuum. He seems to have intended certain provisions to his relations, the extent of which were apportioned to his opinion of their necessities, and which he did not leave in a situation to be enlarged or diminished by any incident which might affect the state of his affairs. Should his property be merely sufficient to pay those annuities and legacies, they were to sustain no deduction; should it be ever so much enlarged, they were to receive no increase; but all he might possess, exceeding those specific donations, was to be given to his nephew. His bounty to his other legatees was measured; that to his nephew was not defined. As in every case where specific legacies are first given, so in this, it is the intent of the testator to prefer the specific legatees. There would have been no motive for giving a specific legacy, subject exclusively to abatement in case of deficiency, to the residuary legatee, but for the purpose of providing a fund for his education and maintenance during his infancy. For every other purpose, this particular legacy to Enoch Silsby is to be considered as a part of the residuum.
It is not easy to assign a motive in the testator for intending a preference to his specific, over his residuary legatee, in the event of an insufficiency of assets at his death, which would not equally apply to an insufficiency which should take place afterwards. The only motive for this preference which could possibly have existed, *266 was his wish that, if the fund should not be adequate to pay all his legacies, yet, no deduction should be made from those which were particularly bequeathed. This wish originated in his particular feelings towards his relations, and could not depend on the insufficiency which he provided against taking place at the time of his death, or a few months or years afterwards. If, at the time of his death, his estate had been sufficient, but before it could be collected and applied according to his will, bankruptcies, or any other casualties, had occasioned a deficiency, no reason can be perceived, by the court, for supposing that the contemplation of such a deficiency would have induced him to make a different arrangement of his affairs, from what he would have made had he contemplated a deficiency at his death. And between such a deficiency, and one occasioned by the fault or misfortune of an executor, chosen, not by his legatees, but by himself, the court can perceive no distinction.
It is, therefore, the opinion of this court, that the decree of the circuit court be reversed, and that the cause be remanded to the circuit court, that an account may be taken, in order to a final decree.
Reversed.

DECREE.
This cause came on to be heard, on the bill, answers, exhibits, and other testimony in the cause, and was argued by counsel; on consideration whereof, the court is of opinion, that there is error in the decree of the circuit court, in directing the bill of the complainants to be dismissed, and that the same ought to be reversed and annulled. And this court doth farther direct and order, that the said cause be remanded to the circuit court, that accounts may be taken of the assets which are in the hands of the defendant, Thomas Young, of the payments which have been made to Enoch Silsby, and of the sums which are due to the complainants, and of such other matters as may be necessary to a final decree.