By the Court.
Sandford, J.
The action is founded wholly upon the neglect of the bank to pay the bill of exchange drawn by the plaintiff, and it was incumbent on him to establish, that the bank had assumed, or become liable to perform, such a duty in his behalf.
The complaint alleges that the plaintiff, or his agents, left funds with the paying teller for the purpose of paying the bill; but there is no proof of that statement. It does not appear, who furnished the funds, and inasmuch as it was presumptively the acceptor’s duty to provide them, we certainly are not at liberty, in the absence of proof, to infer, that they were furnished by the drawer. As the case stands, the money was delivered to the teller in behalf of the acceptor, and if the bank assumed any duty in the premises, it was to him, and he alone was entitled to an action for its neglect. There was no' privity whatever between the bank and the drawer, the bank owed no duty to him, and if he can maintain this suit for damages, so can each of the endorsers to the extent of their damages and disbursements, growing out of the protest of the bill. The proper course, on the plaintiff’s case as proved, was for the acceptor to pay the protested bill, and then bring his action against the bank.
Assuming, however, that the drawer left the money and can maintain a* suit, how does the case stand ? Was the paying teller the agent of the bank, or of the drawer of the bill, in receiving the money in question ? It appears that in this bank there were a cashier, a paying teller, and a receiving teller. Now we know and may assume (as was done I Hill, 94) .that the cashier is the principal executive officer of the bank. A bank is not bound to receive on deposit, or to keep, the funds, of every man who offers money for that purpose. It may select its dealers- and refuse such as it pleases. For the purposes of this selection, the cashier appears to be the proper officer. The bank pays for its dealers who have funds to their credit, such bills and notes, accepted or drawn by them, as are payable at the-bank. The latter circumstance is deemed an order of the depo *131 sitor for the payment of the bill or note out of his funds deposited. But it is only in respect of its dealers, persons keeping an account with the bank, that this course of business exists or can exist.
A person may, no doubt, become a dealer, by a deposit mad'e> on the day his draft or note falls due, though never before in the bank, but his deposit must be made with the proper officer of the institution and with the requisite assent to his becoming such dealer.
In this instance, there is, in the first place, no- pretence that the cashier, or any officer of the bank except the paying teller, ever assented in any manner to the plaintiff’s making, a dteposi't, or becoming a- dealer with the bank. The first step toward establishing a duty of the bank toward the plaintiff is therefore wanting.
Let us suppose this difficulty obviated, the next step is to show» a deposit properly made, that is, that the money was left with an agent of the bank authorized to receive it. The person who» left the money knew that the agent who received it was the paying teller, and not the receiving teller of the bank, and it cannot be said he was ignorant of the fact that there were two such officers. Indeed, there was no such idea advanced at the trial. Now the very names of these two agents indicate to> every one the proper and widely different functions of each. The one is to pay out the money of the bank ; the other is to receive moneys for the bank. Dealers always pay their money to the receiving teller. When they draw money from the bank,, or their notes or bills are presented made payable at the bank, the paying teller pays the amount to them, or to the holders of such notes or bills.
But we are not left to the inference derived from the names of these agents. The answer states that the proper receiving-officer of the bank is the receiving teller, and, that it was not within the duties of the paying teller to receive the money left in this instance, or to assume to pay the plaintiff’s bill with it, and that it is not in the usual course of business to deposit moneys with the paying teller. The reply does not traverse the allegation as to the receiving teller being the proper receiving officer of the bank, but it alleges that the receiving of money by *132 the paying teller, in the hank, during bank hours, is within the ordinary scope of the business of the paying teller and of the bank, and that his receipt and promise in the instance before us, were within his duties and bound the bank.
The proof entirely failed to make out these allegations. It was shown that in several instances, these same parties had left funds with the paying teller in the same way that these were left, but there was no proof that it was his proper function to receive them, or that it was in the usual course of business, for him to receive funds in behalf of the bank. On the contrary, both the cashier and paying teller clearly prove, that it is no part of his duty or business to receive moneys for the bank ; and the teller testifies that when he does receive money for parties who do not keep an account in the bank, in order to pay notes they have drawn payable there, it is as a favor to such parties; he sometimes refuses, sometimes when pressed very hard he takes it for them, and he then keeps it separate from the money of the bank.
It is true the cashier appears to have known in a few instances, that the paying teller thus received money to pay notes and bills, and did not forbid it; but we cannot infer from this an assent of the bank that he should, in their behalf, receive money for that purpose. His duties as their agent were clearly defined, and the cashier’s knowledge that he occasionally, while in the bank, acted for others, does not show that the bank adopted those acts.
So far from the proof showing that, in this transaction, the paying teller' was the agent of the bank, it clearly shows that he was the agent of the party who left the money. The bank had nothing to do with the affair, nor was it intended that it should have. The drawer, it seems, was in the habit of drawing bills payable at this bank, but he kept no account or money there, and his sole object in this operation appears to have been to give a sort of currency to his bills because, payable at a New York bank. If he had opened an account with the defendants’ bank, and kept funds there, the bank would have had the usual benefit of its dealings with depositors, and his bills would have been paid, of course, on presentment. The paying teller, and his substitute in his temporary absence, know as to those who *133 keep accounts in the bank, and pay accordingly. But the drawer and acceptor chose to run the risk of meeting the bill at the proper moment, at the counter of this bank ; and their transaction was simply for their agent to come to the bank on the day the bill fell due, and wait there in front of the paying teller’s desk until the holder of the bill came in and presented it. The money would then be handed by their agent to the holder, and the latter would take it away. The bank derived, and could derive, no possible benefit from such a transaction ; it was never intended that it should ; and the bank was as ignorant of its occurrence, as if it had been done outside of its building, instead of in its office. To avoid the trouble of waiting with the money at the bank counter for the bill to be brought in for payment, these parties resorted to the expedient of asking the paying teller to take the money they had brought, and when the bill came in, to hand it to the holder. He sometimes assented as a favor to them. There was no intention or expectation that the money should go into the hands of the bank, or be mingled with its funds. It was handed to the paying teller, because from his position' in the bank, the bill would necessarily be presented to him for payment, and if he would take the money and retain it till the bill came in, it would save the time and attendance of the agent of the drawer and acceptor. The same expedient has been adopted in reference to bills payable at another bank, as shown by the evidence, and it may be general in this city ; but it cannot alter the relation of the parties in the transaction. The paying teller, in such cases, becomes the agent of the parties who leave the money with him, and the bank is not responsible for his conduct in regard to it.
The case of the Manhattan Company v. Lydig (4 John. R. 377), was like this in principle. There the party, instead of delivering his money to the receiving teller of the bank, handed it, from time to time, to the bank’s book-keeper to deposit it for him. The book-keeper kept part of the money, but by false entries in the dealer’s pass-book and in the books of the bank, concealed the abstraction from both. Sometimes in a pressure of business,, this book-keeper assisted the receiving teller, and sometimes supplied his place in his absence, but none of the money in controversy was delivered to him on those occasions. The Supreme *134 Court decided that the book-keeper, in receiving these moneys, was the agent of the party, and not of the bank, and that the bank was not liable for that portion which did not come to the hands of the receiving teller, or of the person temporarily supplying his place in the bank, or which did not otherwise come into the coffers of the bank.
On the case made at the trial, the plaintiff was not entitled to recover.
The judgment at special term is therefore reversed, and a new trial ordered, with costs to abide the event.
Duer, J.
I assent to every position contained in the opinion just delivered, but we are not to be understood, as saying, that a bank, in a case like the present, may not be rendered liable, by proper evidence of such a general usage, as is alleg-ed, both in the complaint and in the reply. The case, however, clearly shows, that no evidence of such a usage was given upon the trial, that could, with any propriety, be submitted to a jury. Without further evidence, the plaintiff, upon the next trial, must be non-suited.