CHARLES E. ALLEN, administrator *de bonis non, vs.* PURITAN
TRUST COMPANY.

Suffolk.    January 25, 1911. — March 5, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, SHELDON, &
DECOURCY, JJ.

*Probate Court. Judgment. Bank. Equity Jurisdiction.*

A decree of a Probate Court made upon the account of a deceased adminis-
trator, determining the amount due from the estate of such deceased ad-
ministrator to the estate of his intestate, is conclusive in a suit in equity brought
by a successor of the deceased administrator against a bank, seeking to hold
it liable for certain funds of the estate of the intestate embezzled by the de-
ceased administrator.

In a suit in equity by an administrator *de bonis non* against a bank, seeking to
hold the defendant liable for sums of money drawn from the account with the
defendant of the estate of the plaintiff's intestate by a former administrator
by checks payable to his own order which he deposited in his individual ac-
count with the defendant and used for his own purposes, it is no defense that
the surety on the bond of the dishonest administrator negligently failed to
require him to perform his duties as administrator, if it does not appear that
the defendant had any relations with the surety or knew that it was surety on
the administrator's bond; and it is immaterial that the plaintiff had brought
suit against the surety and that the surety had paid to the plaintiff the penal
sum of the bond, and that the plaintiff and the surety had made an agreement
that the surety might sue the defendant in the name of the plaintiff, the surety
bearing the expenses of the suit, and that any amount recovered should be
divided equally between them.

In a suit in equity by an administrator *de bonis non* against a bank, seeking to
hold the defendant liable for sums of money drawn from the account with the
defendant of the estate of the plaintiff's intestate by a former administrator
and dishonestly deposited in his individual account with the defendant, it is
no defense that the intestate's next of kin made no attempt to keep track of the
dishonest administrator or to compel him to account, if it does not appear that
there had been any relations of any kind between any of the next of kin and the
defendant or that the defendant knew who the next of kin were.

In a suit in equity by an administrator *de bonis non* against a bank, seeking to
hold the defendant liable for sums of money drawn from the account with the
defendant of the estate of the plaintiff's intestate by a former administrator and
dishonestly deposited in his individual account with the defendant, it appeared
that at certain times the dishonest administrator overdrew his individual
account with the defendant and on notice of each overdraft deposited in that
account a check, for an amount larger than the amount of the overdraft, drawn
by him as administrator on the account of the estate with the defendant pay-
able to his own order, and that thereafter the dishonest administrator con-

tinued to deposit in his individual account such checks thus drawn by him as administrator. A master found that, on and after the date when an overdraft on the individual account first was made good by the deposit of a check drawn on the estate account, the defendant had knowledge of such facts as reasonably would lead it to suspect that the administrator was using without authority funds of the estate for his own private purposes, but he also found that the defendant at no time had any actual knowledge or suspicion that the administrator was making such use of the funds of the estate. *Held,* that the defendant was liable to account to the plaintiff for the whole amount of the checks deposited by the administrator in his individual account out of which the defendant reimbursed itself for the overdrafts, because as to these checks the defendant had profited by and participated in the unlawful acts of the administrator; but that the defendant was not liable for the amounts of other like checks deposited subsequently by the administrator in his individual account and credited to him by the defendant when there were no overdrafts and when on the master's finding the defendant had no actual knowledge or suspicion of the administrator's wrongdoing.

*It seems,* that a bank, in which an administrator has an account of the estate of his intestate and also an individual account, is not liable to the estate of the intestate for the amount of a check drawn by the administrator to his own order from funds of the estate of his intestate in another bank and dishonestly deposited in such individual account for his own use, if such check is presented in good faith by the bank in which it is deposited to the bank on which it is drawn and is paid without question.

BILL IN EQUITY, filed in the Supreme Judicial Court on August 27, 1908, by the administrator *de bonis non* of the estate of Albert H. Bird, late of Brookline, to recover the amount of certain checks drawn on the defendant and on the First National Bank of Boston by one William L. Baker, as administrator of the estate of the plaintiff's intestate, to the personal order of Baker and indorsed by him and deposited in his personal account with the defendant. The bill prayed that the defendant might be adjudged to be a trustee of the proceeds of these checks and for an accounting and for further relief.

The case was referred to Robert Homans, Esquire, as master. Albert H. Bird died on February 25, 1901. William L. Baker was appointed the administrator of his estate and gave a bond as administrator for $75,000 with the Fidelity and Deposit Company of Maryland, a corporation, as surety. On Baker's first account as administrator, which was filed during his lifetime, no action was taken by the Probate Court until after his death. Baker died on November 3, 1906. Upon Baker's second account as administrator, which was filed by the administrator of his estate, the Probate Court made a decree that the sum of $95,056.69 was

due from the estate of Baker to the estate of Albert H. Bird. No part of this was paid.

The portion of the master's report relating to two defenses set up in a certain paragraph of the answer, in regard to which exceptions hereinafter quoted were taken by the defendant, were as follows:

"The first of these defenses was that the Fidelity and Deposit Company of Maryland was surety on Baker's bond as administrator; that as surety it had a contract with Baker, under the terms of which Baker agreed to conduct the administration of the Bird estate under conditions imposed by it for its security and that of the persons interested in the estate; that the Fidelity and Deposit Company negligently failed to keep Baker to the fulfilment of his contract with it, or of his duties as administrator; that if it had not been negligent in these respects Baker could not have committed the breaches of trust as alleged in the bill of complaint; that the present suit was brought in part for the benefit of the Fidelity and Deposit Company, and that the plaintiff was barred from recovering anything in this suit because of the negligence of the Fidelity and Deposit Company in the respects before mentioned.

,"In support of this defense the defendant offered evidence to show that the plaintiff in this case, after the decree made upon the second account of Baker as administrator, brought suit against the Fidelity and Deposit Company for $75,000, the penal sum named in Baker's administration bond; that thereupon that company paid the plaintiff $75,000, and $150 interest, and entered into a contract with the plaintiff, with the approval of the Probate Court, in the following form: . . .

[The contract referred to was set forth in full, by which the plaintiff agreed to permit the Fidelity and Deposit Company to prosecute at its own expense in his name as administrator *de bonis non* the claims of the estate of Albert H. Bird against the defendant and that any proceeds collected, after deducting the expenses of litigation, should be divided equally between the Fidelity and Deposit Company and the estate of Albert H. Bird.]

"The defendant further offered in evidence, in support of this defense, the application made by Baker to the Fidelity and Deposit Company on the strength of which that company became

surety on Baker's bond as administrator. [This application was annexed.]

"After offering this application in evidence, the defendant offered to show that the Fidelity and Deposit Company never examined the inventory of the Bird estate, nor checked up the securities with the inventory; never took possession of or examined the securities; never ascertained from Baker what bank accounts he had opened as administrator; never took any steps to have Baker's first account as administrator acted upon by the Probate Court; never exercised any control over Baker's conduct as administrator, except in respect to the account which Baker had opened with the Faneuil Hall National Bank; never called upon Baker for reports of his receipts and disbursements; never insisted that Baker should comply with the conditions of his probate bond as administrator; and, in general, never kept Baker to the fulfilment of his contract with it or of his duties as administrator. There was, however, no evidence offered before me to show that the defendant had had any relations whatsoever with the Fidelity and Deposit Company. The defendant asked one Sturges, who had been assistant treasurer of the Puritan Trust Company while Baker was its customer, whether he had ever heard that the Fidelity and Deposit Company was surety on Baker's administration bond. I excluded this question, against the defendant's objection. The answer would have been in the negative.

"After hearing the evidence and testimony which the defendant offered in support of this defense, I ruled that the plaintiff's right to recover was in no way affected by the conduct of the Fidelity and Deposit Company, and consequently excluded all the evidence and testimony offered by the defendant in support of this defense.

"The second defense set up by the paragraphs numbered 7 in the defendant's answer was based upon the conduct of the next of kin of Albert H. Bird. The defendant offered evidence to show that there were eleven persons interested in the Albert H. Bird estate, that they all knew of Bird's death within a year after Baker's appointment as administrator, and that no one of them made any attempt to keep track of Baker's acts as administrator, or to compel him to account, or to keep Baker in any way up to his duties as administrator. There was no evidence before me that

there had been any relations of any kind between any of these next of kin and the defendant, or that the defendant knew who the next of kin were. After hearing the evidence offered, I ruled that the plaintiff's recovery in this action could not be defeated by this conduct of the next of kin. I therefore excluded all the evidence offered in support of this defense."

The "Conclusions" of the master's report were as follows:

"1. All the deposits made by Baker with the defendant to the credit of the Bird estate were of moneys belonging to that estate for which he was accountable as administrator, and of this the defendant had notice by the opening and carrying of the account as 'Estate of Albert H. Bird; Wm. L. Baker, Administrator.'

"2. With the exception of the cheque of December 9, 1903, for $6,100 Baker used his individual account with the defendant for his own private purposes.

"3. The cheques on the Bird estate account set forth in schedule B, annexed to the bill of complaint, as drawn to Baker's own order [amounting to about $28,550] were all so drawn, and, with two exceptions, were all deposited to Baker's individual account with the defendant on the respective dates shown in the left-hand column of the table in the report. The two exceptions were the cheques of June 20, 1903, and July 31, 1906, drawn for $25 and $38.38, respectively, both of which were cashed by the defendant.

"4. Baker, in the following instances, repaid the defendant the overdrafts upon his individual account by the deposit to his individual account of cheques drawn to his own order on the Bird estate account.

| Overdraft | Jan. | 25, 1902, | repaid by deposit of | $ | 200, | Jan. | 27, 1902. |
|-----------|------|-----------|----------------------|---|------|------|-----------|
| " | March 19, 1902, | " " " " | | 1059, | March 20, 1902. |
| " | March 29, 1902, | " " " " | | 1000, | March 31, 1902. |
| " | June 30, 1902, | " " " " | | 500, | July 1, 1902. |
| " | Dec. 23, 1902, | " " " " | | 50, | Dec. 24, 1902. |

"5. When the defendant in 1902, on January 27, March 20, March 31, July 1, and December 24, received for deposit to Baker's individual account cheques drawn by him to his own order on the Bird estate account and in each instance reimbursed itself therefrom for the amounts Baker owed it on each of these days for overdrafts on his individual account, the defendant thereby, and

by that alone, had notice that Baker was then paying money owed by him to the defendant with funds belonging to the Bird estate, and was put upon its inquiry as to whether Baker had or had not a right to use those funds for such purposes.

"6. On and after the date when an overdraft on Baker's individual account was first made good by the deposit of a cheque drawn on the Bird estate account, namely, on January 27, 1902, the defendant, judged from the standpoint of a reasonably prudent banker, had knowledge of such facts as would reasonably lead it to suspect that Baker, in drawing, and depositing or cashing, cheques to his own order on the Bird estate acco nt, was using without authority funds of the Bird estate for his own private purposes.

"7. At no time, even when it reimbursed itself for Baker's individual overdrafts, did the defendant, in crediting to Baker's individual account cheques drawn to his own order on the Bird estate account, or in cashing the same, have any actual knowledge or suspicion whatever that Baker was using without authority funds of the Bird estate for his own private purposes, and the defendant was not privy to his so using those funds for such purposes.

"8. The defendant must account to the plaintiff for $200, with interest from January 27, 1902; for $1,000, with interest from March 20, 1902; for $1,000, with interest from March 31, 1902; for $500, with interest from July 1, 1902; and for $50, with interest from December 24, 1902. In each instance simple interest at six per cent is to be allowed. Save as aforesaid, the defendant is under no liability to account to the plaintiff." ..

The defendant's exceptions to the master's report, except the second and third which were waived, were as follows:

"1. To the statement or finding of the master that no other proceedings have been had in the Probate Court affecting the issues in this case, in the matter of the administration of William L. Baker upon the estate of Albert H. Bird, beyond the second administrator's account and the action of the court thereon; the same being inconsistent with the evidence, and with evidence offered by the defendant and excluded by the master."

"4. To the admission in evidence and consideration by the master of the six checks of Baker on the First National Bank, and all evidence relating thereto; the same being inadmissible as evidence and incompetent to charge the defendant.

"5. To the ruling of the master that the plaintiff's right to recover was in no way affected by the conduct of the Fidelity and Deposit Company, and to the exclusion by him of all the evidence and testimony offered by the defendant in support of this defense; as erroneous in law.

"6. To the ruling of the master that the plaintiff's recovery could not be defeated by the conduct of the next of kin of Albert H. Bird, as shown in evidence, and to the exclusion by him of all the evidence offered in support of this defense; as erroneous in law.

"7. To the finding of the master stated in paragraph 5 of the report, under the head 'Conclusions,' in substance to the effect that the defendant had notice on January 27, March 20, March 31, July 1, and December 24, 1902, that Baker was then paying money owed by him to the defendant with funds belonging to the Bird estate, and was put upon its inquiry as to whether Baker had or had not a right to use those funds for such purposes; as inconsistent with and unwarranted by the law or the evidence.

"8. To the finding stated in paragraph 6 of the report, under the same head, that on and after January 27, 1902, the defendant, judged from the standpoint of a reasonably prudent banker, had knowledge of such facts as would reasonably lead it to suspect that Baker, in drawing, and depositing or cashing, checks to his own order on the Bird estate account, was using without authority funds of the Bird estate for his own private purposes; as inconsistent with and unwarranted by the law or the evidence.

"9. To the finding of the master for the plaintiff for $200, with interest from January 27, 1902; $1,000, with interest from March 20, 1902; $1,000, with interest from March 31, 1902; $500, with interest from July 1, 1902, and $50, with interest from December 24, 1902; and especially to the finding of the master for these respective amounts, for the special reason that they are the amounts of the respective checks of Baker by which overdrafts on his personal account are found to have been reimbursed to the defendant, and in each case largely exceed the amount of the overdraft which is found to have been thereby reimbursed; and the defendant especially excepts to any finding for any amount exceeding the amount of the overdrafts so found to have been reimbursed; all as inconsistent with and unwarranted by the law or the evidence."

The plaintiff also filed exceptions to the master's report as follows:

"1. For that the master should have found, on the facts reported, that the defendant was liable to the plaintiff for the amount of all checks drawn by Baker as administrator to his own order on the Bird estate account against the defendant bank, and deposited to his personal account in the defendant bank or cashed by the defendant bank.

"2. For that the master should have found, on the facts reported, that the defendant was liable to the plaintiff for the amount of all checks drawn by Baker as administrator to his own order on the Bird estate account against the Fourth [First] National Bank and deposited to his personal account in the defendant bank.

"3. For that the master, though in his sixth conclusion he found and ruled that on and after January 27, 1902, the defendant, judged from the standpoint of a reasonably prudent banker, had knowledge of such facts as would reasonably lead it to suspect that Baker, in drawing, and depositing or cashing, checks to his own order on the Bird estate account, was using, without authority, funds of the Bird estate for his own private purposes, found and ruled that the defendant was not liable for checks thereafter drawn by Baker as administrator to his own order on the Bird estate account against the defendant bank and deposited to his own personal account in the defendant bank or cashed by the defendant bank.

"4. For that the master, though in his sixth conclusion he found and ruled that on and after January 27, 1902, the defendant, judged from the standpoint of a reasonably prudent banker, had knowledge of such facts as would reasonably lead it to suspect that Baker, in drawing, and depositing or cashing, checks to his own order on the Bird estate account, was using, without authority, funds of the Bird estate for his own private purposes, found and ruled that the defendant was not liable for checks thereafter drawn by Baker as administrator to his own order on the Bird estate account against the Fourth [First] National Bank and deposited to his own personal account in the defendant bank.

"5. For that the master, though in his sixth conclusion

he found and ruled that on and after January 27, 1902, the defendant, judged from the standpoint of a reasonably prudent banker, had knowledge of such facts as would reasonably lead it to suspect that Baker, in drawing, and depositing or cashing, checks to his own order on the Bird estate account, was using, without authority, funds of the Bird estate for his own private purposes, found and ruled that the defendant bank was not privy to Baker's wrongdoing.

"6. For that the master should have found and ruled that if the bank had knowledge of such facts as would reasonably lead it to suspect that Baker, in drawing, and depositing or cashing, checks to his own order on the Bird estate account, was using without authority funds of the Bird estate for his own private purposes, it was put upon its inquiry, and was responsible for the amount of all checks thereafter drawn by Baker as administrator against the Bird estate account at the defendant bank, or at the Fourth [First] National Bank, to his own order, and deposited to his personal account in the defendant bank or cashed by the defendant bank."

The case came on to be heard before *Braley*, J., who reserved it upon the pleadings, the master's report and the exceptions thereto for determination by this court.

The case was argued at the bar in January, 1911, before *Knowlton*, C. J., *Morton, Loring, Braley, & Rugg*, JJ., and afterwards was submitted on briefs to all the justices then constituting the court except *Loring*, J.

*E. K. Arnold*, (*W. B. Luther* with him,) for the plaintiff.

*A. E. Pillsbury & A. Whiteside*, for the defendant.

BRALEY, J.  The master to whom the case was referred reports, that William L. Baker, the first administrator of the estate of Albert H. Bird, opened two accounts with the defendant. By the terms of deposit as entered on its books, the first stood in his name individually, while the second, consisting wholly of moneys belonging to the estate, appeared in the name of the estate followed by his own name as administrator. But while the money deposited could be disposed of by the defendant subject only to the obligation to pay an equivalent sum on demand, or to his order, the checks of the depositor would not transfer the debt or title to the debt to the payee without the defendant's consent. *Carr*

v. *National Security Bank,* 107 Mass. 45, 58.   *Gregory* v. *Merchants' National Bank,* 171 Mass. 67, 69.   *Heath* v. *New Bedford Safe Deposit & Trust Co.* 184 Mass. 481, 483.   *Bank of the Republic* v. *Millard,* 10 Wall. 152, 157.   *Phœnix Bank* v. *Risley,* 111 U. S. 125.   The master finds, that either to reimburse the defendant for overdrafts, or for his own private purposes, Baker as administrator transferred the money of the estate to his personal account by checks drawn to his own order, and that it also accepted checks in similar form drawn on the funds of the estate deposited in a national bank, and credited him with the amounts. The report further states that there was no evidence to show that the administrator had authority in fact to make any of these transfers for his own use, and, there having been none in law, the plaintiff, who is the second administrator of the Bird estate, having been partially reimbursed by the payment of the surety company on the first administrator's bond, brings this bill in equity to recover from the defendant the full amount of the embezzled deposits.   The second and third of the defendant's nine exceptions to the report having been expressly waived, we first consider the first, fifth and sixth, which raise the questions whether the finding of the master that the decree of the Probate Court upon the administrator's second account was conclusive as to the amount of Baker's embezzlement, and his rulings that the plaintiff's right of recovery was not affected by the conduct of the surety company, or defeated by the failure of the next of kin of Bird to discover his misconduct and protect the estate, and the exclusion of evidence offered in support of these alleged defenses, were erroneous.

The surety company was obliged to pay the amount fixed by the probate decree until the penal sum was exhausted, and Baker having filed only a first account on which no action was taken by the court until after his death, the decree upon the second probate account, presented by the administrator of Baker's estate, is decisive as to the amount of the defalcation, and cannot be collaterally attacked in the present litigation.   R. L. c. 162, § 2. *Bennett* v. *Pierce,* 188 Mass. 186, 187.   *Connors* v. *Cunard Steamship Co.* 204 Mass. 310, 322.

If it had not paid, the plaintiff could have sued, and the failure of the next of kin to ascertain, that the estate was being misappropriated, would not have defeated the suit. *Oberlin College* v.

*Fowler,* 10 Allen, 545. *Hayes* v. *Hall,* 188 Mass. 510, 514. *Choate* v. *Arrington,* 116 Mass. 552, 556. The plaintiff if he preferred could resort to the bond, rather than litigate the alleged equitable claims now presented against the defendant, which if fully recovered would have been insufficient to exonerate the surety. By relying on the bond he did not waive his right to proceed subsequently against the defendant, even if by agreement between them the expenses of the present litigation are to be borne by the surety, and if successful, the amount recovered is to be divided in certain proportions for its benefit and the benefit of the estate. *O'Herron* v. *Gray,* 168 Mass. 573. Moreover, the surety would have been subrogated to the excess, after the difference between the penalty of the bond and the amount of the probate decree with the costs of recovery had been satisfied, from any proceeds recovered from the defendant, and could have enforced this right by suit. *John-son* v. *Bartlett,* 17 Pick. 477. *Hart* v. *Western Railroad,* 13 Met. 99. *Wall* v. *Mason,* 102 Mass. 313, 316. *Thayer* v. *Finnegan,* 134 Mass. 62, 66.

It may be assumed that if the next of kin had been diligent the misconduct of the administrator might have been discovered earlier; but they are not shown to have known of the transactions or been possessed of any information which should have aroused their suspicion, and their inaction by failing to compel the administrator to account, or to inquire as to his administration of the estate did not mislead the defendant, with whom they sustained no contractual relations. *Stiff* v. *Ashton,* 155 Mass. 130.

The agreement of indemnity which Baker gave to procure the contract of suretyship having been for the protection only of the surety, its failure to enforce it does not estop the plaintiff from pursuing the defendant if a participator in the administrator's betrayal of the trust.

But if these exceptions are not tenable, the fourth, seventh, eighth and ninth exceptions present the principal questions upon which the defendant's liability depends. It broadly contends that the master's findings that on and after the date of the first overdraft, which was paid by a check drawn on the estate's account, the defendant if judged from the point of view of a reasonably prudent banker had knowledge of such facts as should have led it to suspect that the funds of the estate were being wrongly used,

were unwarranted either in law or upon the evidence, and that it cannot be held for any part of the moneys taken by the administrator. The personal property of the estate was held by him in a fiduciary capacity, and the source and nature of the respective accounts were fully disclosed by the contract. *Robins* v. *Hope,* 57 Cal. 493, 497. *Hayes* v. *Hall,* 188 Mass. 510, 511. *J. G. Brill Co.* v. *Norton & Taunton Street Railway,* 189 Mass. 431. *Quinn* v. *Burton,* 195 Mass. 277, 279. And in the discharge of their several duties, which were fully detailed by the master, the officers and agents of the defendant were charged with knowledge of the scope and effect of the various entries relating to the deposit as shown on the defendant's books. *Foster* v. *Essex Bank,* 17 Mass. 479, 489. *Elliott* v. *Worcester Trust Co.* 189 Mass. 542, 545. *East Hartford* v. *American National Bank,* 49 Conn. 539. *Bundy* v. *Monticello,* 84 Ind. 119. *American Exchange National Bank* v. *Loretta Gold & Silver Mining Co.* 165 Ill. 103. *Cutler* v. *American Exchange National Bank,* 113 N. Y. 593. *Duncan* v. *Jaudon,* 15 Wall. 165. *Bodenham* v. *Hoskyns,* 2 DeG., M. & G. 903. *Pennell* v. *Deffell,* 4 DeG., M. & G. 372. *Bailey* v. *Finch,* L. R. 7 Q. B. 34. If the primary relation was that of debtor and creditor, nevertheless on the face of a specific contract the money belonged to the estate, and the defendant must be held to have known, that if the administrator appropriated it to his own use the appropriation would be a breach of his trust. *Shaw* v. *Spencer,* 100 Mass. 382. *McCarthy* v. *Provident Institution for Savings,* 159 Mass. 527. *O'Herron* v. *Gray,* 168 Mass. 573. *Gerard* v. *McCormick,* 130 N. Y. 261. *National Bank* v. *Insurance Co.* 104 U. S. 54. The money due to the defendant for overdrafts was paid with its knowledge and consent by checks drawn on the administrator's account, which were in excess of the debt, and were correspondingly credited in his private account. If, as the defendant urges, the legal title to the personal property of the estate was in the administrator, the beneficial interest was in the next of kin of the intestate, who not only could demand but could enforce an accounting. R. L. c. 150. *Bard* v. *Wood,* 3 Met. 74. *Choate* v. *Jacobs,* 136 Mass. 297. *Silsby* v. *Young,* 3 Cranch, 249. And the nature of the fund was not changed by its having been diverted, and placed to the personal credit of the administrator. *Morrill* v. *Raymond,* 28 Kans.

415. *National Bank* v. *Insurance Co.* 104 U. S. 54. *Union
Stock Yards Bank* v. *Gillespie*, 137 U. S. 411. *Bailey* v. *Finch*,
L. R. 7 Q. B. 34. It is not a sufficient answer, that, if in-
quiry had been made, doubtless the administrator might have
given an explanation which would have appeared to be reason-
able. Having notice of the trust, the defendant was dealing with
trust funds, and was bound by the information which it could
have obtained if an inquiry had been pushed until the truth had
been ascertained. *Shaw* v. *Spencer*, 100 Mass. 382, 389, 391.
*Loring* v. *Brodie*, 134 Mass. 453, 459. *Ex parte Kingston*, L. R.
6 Ch. 632. The transformation of the account in the man-
ner adopted was furthermore a voluntary participation on
the part of the defendant with an agreement to credit and pay
the amount of the excess to Baker individually. The defend-
ant places much reliance upon the case of *Gray* v. *Johnston*,
L. R. 3 H. L. 1, where a single check on the funds of the es-
tate having been drawn by the executrix not to her individual
order, but to the order of the firm to whose membership she
succeeded on the death of her husband, the defendant was held not
to be responsible for the misappropriation, as it might well have
been assumed by the bank, that the check was properly given in
settlement of the accounts between the partnership and her hus-
band's estate. The decision in *Fillebrown* v. *Hayward*, 190 Mass.
472, rests upon the ground that the defendant received the checks
of the treasurer drawn on funds of the corporation in payment
of his individual debts in good faith, and without any actual
knowledge or information which should have put her upon inquiry
as to the source from which he obtained the sums sent her. So
also in *Batchelder* v. *Central National Bank*, 188 Mass. 25, the single
justice found, that the bank had no reason to believe that the
trustee who deposited the check in his individual account, which
was payable to his own order as trustee, was acting dishonestly,
while in *Newburyport* v. *Spear*, 204 Mass. 146, the city treasurer
having paid his own debt by a check drawn against the city's
funds, it was said, that "in the absence of suspicious circumstances
the bank had no duty to concern itself with that subject." In
the present case, however, during a period from January 25,
1902, to December 23, 1902, there were numerous checks differ-
ing in amount, but each of the same general tenor and fraudulent

nature, and two distinct accounts plainly indicating the different capacities in which Baker transacted business with the defendant. The payments to itself, with the accompanying transfers from the estate's account to his private account could not have been accomplished without the active instrumentality of the defendant. If the doctrine of constructive notice has no application where there is no duty of inquiry resting upon the banker, the fifth and sixth general findings establish the fact, that the unlawful transfers were made under such conditions, that the defendant was charged with knowledge of the irregularities. *Kennedy* v. *Green*, 3 Myl. & K. 699. *Wood* v. *Carpenter*, 101 U. S. 135.

The findings having been amply warranted by the master's statement of the evidence are decisive as to the defendant's knowledge, as well as of its participation, for which it must be held accountable. *Greenfield School District* v. *First National Bank*, 102 Mass. 174, 176. *Merchants' National Bank* v. *Haverhill Iron Works*, 159 Mass. 158. *National Revere Bank* v. *Morse*, 163 Mass. 383, 385. *Regester's Sons Co.* v. *Reed*, 185 Mass. 226, 227. The principle governing the defendant's liability is, that a banker who knows that a fund on deposit with him is a trust fund cannot appropriate that fund for his private benefit, or where charged with notice of the conversion join in assisting others to appropriate it for their private benefit, without being liable to refund the money if the appropriation is a breach of the trust. *Shaw* v. *Spencer*, 100 Mass. 382. *Fisher* v. *Brown*, 104 Mass. 259, 261. *American Exchange National Bank* v. *Lorette Gold & Silver Mining Co.* 165 Ill. 103. *American National Bank* v. *Fidelity & Deposit Co.* 129 Ga. 126. *Swift* v. *Williams*, 68 Md. 236. *Duckett* v. *National Mechanics' Bank*, 86 Md. 400. *Bank of Greensboro* v. *Clapp*, 76 N. C. 482. *Ihl* v. *Bank of St. Joseph*, 26 Mo. App. 129, 141. *Commercial & Agricultural Bank* v. *Jones*, 18 Texas, 811. *East Hartford* v. *American National Bank*, 4 Conn. 539. *Bundy* v. *Monticello*, 84 Ind. 119. *Ward* v. *City Trust Co.* 192 N. Y. 61. *Farmers' Loan & Trust Co.* v. *Fidelity Trust Co.* 86 Fed. Rep. 541. *National Bank* v. *Insurance Co.* 104 U. S. 54. Compare *Goodwin* v. *American National Bank*, 48 Conn. 550.

The master's seventh general finding, that the defendant did not have any actual knowledge or suspicion that the administrator by the subsequent transfers was misappropriating the funds of

the estate, and that it was not privy to them, is not inconsistent with the fifth and sixth findings, and disposes of the plaintiff's further contention, that the defendant should be charged with the amount of these embezzlements. We are not unmindful of the strength of the plaintiff's argument, that even if the defendant was under no obligation to supervise the application of the money, yet it could not have been compelled to honor and credit his individual account with checks drawn on trust funds to his individual order by which the numerous fraudulent transfers from one account to the other covering a period of two years were effected, and that by the respective contracts of deposit the individual and representative accounts were plainly distinguishable. *Thatcher v. State Bank,* 5 Sandf. 121. *Chicago Marine & Fire Ins. Co. v. Stanford,* 28 Ill. 168, 173. *Gerard v. McCormick,* 130 N. Y. 261. *Hunt v. Maniere,* 34 Beav. 157, 160. But while upon their face these circumstances well might have led the defendant to suspect that a misappropriation was taking place, and that money of the estate was being applied to the administrator's private use, the question whether the defendant had notice of the irregularities was one of fact, and the master's finding not appearing to be clearly wrong should not be reversed. *Greenfield School District v. First National Bank,* 102 Mass. 174, 176. *Fillebrown v. Hayward,* 190 Mass. 472.

The five checks drawn by Baker to his own order on funds of the estate deposited in a national bank, which the defendant discounted, and placed to his individual credit are also covered by the master's finding. It presented the checks in good faith to the bank on which they were drawn, and had the right to rely on the representation of the bank by the payment of the money, that the checks were not being used for Baker's personal advantage. R. L. c. 73, §§ 69, 72, 73. *Havana Central Railroad v. Knickerbocker Trust Co.* 198 N. Y. 422.

The exceptions of each party to the master's report, therefore, must be overruled, and the report confirmed, and the defendant is to be charged only for the amounts received in payment of the overdrafts and the amounts transferred to Baker's individual account in the settlement of the overdrafts with interest from the dates stated in the report.

*Decree accordingly.*