**BANK OF COMMERCE OF RALSTON, OKL., v. UNITED STATES FIDELITY & GUARANTY CO.**

No. 450.

Circuit Court of Appeals, Tenth Circuit.

Dec. 14, 1931.

J. H. Maxey, of Tulsa, Okl. (Chas. A. Holden and Maxey, Holden & Holleman, all of Tulsa, Okl., and Leahy, Macdonald & Files, of Pawhuska, Okl., on the brief), for appellant.

Thomas H. Owen and Ned Looney, both of Oklahoma City, Okl. (Paul N. Lindsey, of Oklahoma City, Okl., and A. Camp Bonds, of Muskogee, Okl., on the brief), for appellee.

Before COTTERAL and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

COTTERAL, Circuit Judge.

The United States Fidelity & Guaranty Company was compelled by judgment in a suit of J. O. Cales, guardian of Little Soldier, a minor Osage Indian, to pay its obligation as surety on the bond of L. L. Oller, the for-

mer guardian, for his default in accounting for the trust funds of that minor. The company brought this suit as subrogee against the Bank of Commerce, claiming it participated in the conversion by Oller of such funds. Judgment was rendered for the company, and the bank appeals.

The case was tried to the court upon stipulation that the respective statements of counsel for the parties should be taken as the agreed facts and they might introduce certain exhibits, one of which was a transcript of the testimony of Cales in his suit against the company. There was no dispute of fact in the case. The findings of the trial court, while omitting some of the circumstances, cover the more important and the material facts. They were as follows:

"The plaintiff, United States Fidelity & Guaranty Company, became surety on the bond of L. L. Oller on or about April 5, 1923, Oller having been appointed guardian of Franklin C. Little Soldier, minor Osage Indian. Oller, when required to file a report of his guardianship in the probate court, approached J. O. Cales, president of the defendant bank, and advised Cales that his report as guardian was overdue, that he had been sued, and requested a loan of $8,712.44 for a short period of time, so that he could show this amount to his credit as guardian. The loan was made by the bank, acting through Cales as president, and Oller as guardian was given a certificate of deposit for $8,000.00 and a credit on the books of the bank for $712.44. Within a day or two after his report was filed as guardian, and before it was approved, Oller returned to the bank and paid the note which he had executed evidencing the loan he had obtained from the defendant bank for the purpose of obtaining funds to be shown as guardianship assets. At the time of the payment of the loan Oller stated to Cales that he had probably made a mistake by leaving the certificate of deposit in the Little Soldier account with Mr. Cales; that if he had taken it to a bank with larger capital he would have been able to get a larger line of personal credit. He thereupon expressed a desire to deposit the money credited to his guardianship account in another bank as the basis for personal credit. Thereupon, Cales paid Oller $8,000.00 in currency upon the certificate of deposit, and $712.44 on his check. Oller used the funds personally and they were never paid to the minor Indian, but were appropriated personally by Oller. Oller died and Cales was appointed guardian of the minor Indian, and as such guardian, prosecuted a case against the

plaintiff in this action upon its contract of suretyship because of the default of Oller in his guardianship trust. Plaintiff was compelled to pay under the bond of suretyship, and prosecuted this action against the defendant bank upon the theory that the bank, acting through its president, Cales, permitted Oller to withdraw trust funds in his individual capacity to be used for his personal benefit.

"The evidence further clearly establishes, as a fact, that Cales, as president of the defendant bank, was advised by Oller as to his purpose in withdrawing the fund and that by reason thereof, the bank had actual knowledge of the trust character of the fund, further knew that Oller's report as guardian was overdue, and that the loan was obtained for the purpose of creating the fund in the guardianship matter.

"It was further established as a fact that the bank paid Oller $8,000.00 in cash upon a certificate of deposit, and further paid him $712.44 upon Oller's check which it cashed for him individually."

The conclusions of law were, in substance, that a bank having knowledge of the trust character of the funds is liable if it aids or participates in misappropriating them, that in this case it did so by paying the money to Oller with knowledge it was to be used for his personal benefit and not in the due course of the guardianship for the benefit of the ward, and that the bank was liable for permitting such withdrawal of the trust funds which were subsequently appropriated for his private use. As the result, judgment followed in favor of the surety company against the bank for $8,712.44, with legal interest from September 16, 1928, and for the costs of suit.

■ The principle is well settled that a bank is liable for the restoration of trust funds, if it knowingly aids a depositor in withdrawing and converting them to his personal use, or profits from the transaction. Empire Trust Co. v. Cahan, 274 U. S. 473, 47 S. Ct. 661, 71 L. Ed. 1158, 57 A. L. R. 921; Whiting v. Hudson Trust Co., 234 N. Y. 394, 138 N. E. 33, 25 A. L. R. 1470; Maryland Casualty Co. v. City National Bank (C. C. A.) 29 F.(2d) 662; Bischoff v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059; Parker-Gordon Cigar Co. v. Liberty National Bank, 134 Okl. 286, 273 P. 269; Cocke v. Loyall, 150 Va. 336, 143 S. E. 881; Oklahoma State Bank v. Galion Iron Works (C. C. A.) 4 F.(2d) 337; Duckett v. National Mechanics' Bank, 86 Md. 400, 38 A. 983,

39 L. R. A. 84, 63 Am. St. Rep. 513; Allen v. Puritan Trust Co., 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518; Farmers' Bank of Alamo, Ga., v. U. S. F. & G. Co. (C. C. A.) 28 F.(2d) 676; L. R. A. 1915C, 519, note. The inquiry in this case is whether the appellant, when it paid the deposits to Oller, under the circumstances, assisted him in a purpose to appropriate the funds to his own use.

It is true the bank knew the certificate and the deposit accounts represented the trust funds of the Indian ward. But they were within the control of the guardian. He had a legal right to withdraw them from the bank, upon surrender of the certificate and presentation of the check, and the bank had no right to refuse Oller's demand for the funds, unless by paying out the funds it was privy to a misappropriation of them.

By the mere payments, therefore, the bank incurred no liability. They might be lawfully made for the purpose of a deposit as a credit to his guardianship account in another bank. The notice the appellant had was that the transfer would enhance his personal credit in the other bank, or afford a basis for it. A notice that he would transfer the funds to another bank, and this would in some indefinite way influence his personal credit, was not a notice that he would not so transfer the funds but would misappropriate or not fully account for the funds, and no inquiry would have disclosed such purpose. But this is not the test of liability in the present case. In order to bind the appellant bank to responsibility, it was essential that it had notice of the misappropriation that occurred, for it is with that act the bank is sought to be charged. There is no showing or claim that it had any intimation he did not intend to transfer the trust account but meant to make a downright embezzlement of the funds. That was a subject wholly foreign to the transaction the bank had with him, the bank had no ground to infer or suspect it, and there was no circumstance to put the bank on inquiry to discover it. We are therefore unwilling to hold that because this bank had notice he might enjoy some personal benefit from the funds after depositing them as a trust account in another bank, it in any way by the payments to him aided him in his subsequent embezzlement of those funds.

The true rule which applies is that the bank was bound to assume, in the absence of adequate notice to the contrary, the funds were legally and properly withdrawn by the guardian. Bischoff v. Yorkville Bank, supra; Duckett v. National Mechanics' Bank, supra; Empire Trust Co. v. Cahan, supra; Parker-Gordon Cigar Co. v. Liberty National Bank, supra. Its duty was not to act as censor over the withdrawal of funds by its depositor, but to refrain from disbursing them in such way as to aid him in converting them or to profit from the conversion. Cocke v. Loyall, supra; Farmers' Bank of Alamo v. U. S. F. & G. Co., supra. To hold the bank liable for its payment to Oller of the funds in question, under the circumstances of this case, would be to impose a hazard on banking far beyond any rule of justice or safety.

The judgment in this case is therefore reversed, and the case is remanded to the District Court with direction to dismiss the petition and tax all costs to the appellee.

Reversed.