Zottoli, J.
The report in substance states, “This is an action of contract, ... in which the plaintiff seeks to recover upon a ‘Joint Control Countersignature Agreement’ hereinafter set forth in the Trial Court’s Memorandum of Findings of Fact.” The answer of the defendant is a general denial, that there was no consideration for the .execution of the alleged “Joint Control Countersignature Agreement and that said agreement is against public policy and, therefore, void.” The report further states “the Court filed a ‘Memorandum of Findings of Facf *433 which sets forth all the facts and evidence material to the question of law reported,” a copy of which is as follows:
“Alfred R. Smith died a resident of Billerica, Middle-sex County, Massachusetts, December 20, 1937. At the time of his death, he had an account in the defendant Bank, which was a Savings Institution located at Saco, in the State of Maine. There was no evidence that said Bank was ever authorized to transact business in the Commonwealth of Massachusetts. Arthur W. Butter was appointed Administrator, c. t. a. of Smith’s estate by the Probate Court in Middlesex County on May 27, 1938, and qualified by giving bond with the Hartford Accident & Indemnity Company as surety on June 10,1938. In consideration of the Hartford Accident & Indemnity Company becoming surety on his bond, Butter agreed to pay the Surety Company a premium on said bond of $95.00 a year. On June 13, 1938, Butter executed and delivered to the Hartford Accident & Indemnity Company a document entitled Joint Control Countersignature Agreement’ which was on a printed form prepared by the Hartford Accident & Indemnity Company and was in the form of a letter from Butter to the defendant, a copy of which is as follows:
HABTFOBD ACCIDENT AND INDEMNITY COMPANY
Hartford, Connecticut
JOINT CONTROL COUNTERSIGNATURE AGREEMENT
SACO & BIDDEFOBD SAVINGS INSTITUTION Saco, Maine.
Gentlemen:
In consideration of the Hartford Accident and Indemnity Company becoming Surety on my bond as Administrator c. t. a. of the estate of Alfred B. Smith, I have entered into an agreement with said Company whereby it is to exercise jointly with me control of all moneys now or which may be hereafter deposited in your Bank in my name as such Fiduciary or in the name of said *434 estate or proceeding, including checking accounts, savings accounts, or certificates of deposit. You will, therefore, honor only such cheeks, drafts, or other withdrawal orders against my accounts or accounts as such Fiduciary as shall bear the countersignature of any one of the representatives of said Company whose specimen signatures appear below.
This notice shall remain in force unless revoked in writing by said Surety Company.
Furthermore, you will oblige me by furnishing said Company with such information regarding said deposits as it may from time to time require.
Very truly yours,
Arthur W. Butter
Countersignatures:
Elizabeth A. Shepherd
Boger W. Cates
We acknowledge receipt of the above notice and assent to and confirm the above Joint Control arrangement.
Saco & Biddefobd Savings Institution
By H. S. Sawyer, Treasurer
Balance on hand, $2,409.09
as of October 6, 1938.
Note — Execute in Duplicate — One Copt por Depository and One for Surety.
Betum one copy to................................

(Agent, General Agent or Branch)

Address................................
“On September 27, 1938, representatives in Boston of the plaintiff mailed said so-called ‘Joint Control. Countersignature Agreement’ to the defendant at Saco, Maine, and on October 6, 1938, H. S. Sawyer, Treasurer of the Saco and Biddeford Savings Institution, signed the name of the Bank by himself as Treasurer to said so-called ‘Joint Control Countersignature Agreement’ and mailed it from Saco, Maine, to. the plaintiff’s representatives in Boston. The defendant had a copy of said agreement which is kept in its. file, but at no. time put on its ledger cards any notation *435 relative to the requirement of the countersignature of a representative of the plaintiff on checks drawn on said account, as set forth in the second paragraph of said agreement.
“It was agreed at the trial that if any contract was made by Saco and Biddeford Savings Institution said contract was made in the State of Maine.
“On October 6,1938, when said so-called ‘Joint Control Countersignature Agreement’ was so executed, there was on deposit with the defendant Bank, in the account standing in the name of Alfred R. Smith, hereinbefore referred to, the sum of $2,409.09. On October 8, 1938, this account was transferred by the defendant to the name of ‘Estate of Alfred R. Smith, Arthur W. Rutter, Administrator, c. t. a.’ On November 3, 1938, the defendant issued a check for $750; on December 5, 1938, a check for $1,000, and on December 20, 1938, a check for $659.09. The defendant at no time requested the countersignature of the plaintiff and all of these checks-were issued on orders signed only by Arthur W. Rutter, as Administrator, and the checks for $1,000 and $659.09 were made payable to the Estate of Alfred R. Smith, and the .check for $750 was made payable to the Estate of Alfred R. Smith, Arthur W. Rutter, Admr. c. t. a. All of said checks were mailed to Rutter and, thereafter, were deposited in the Cambridge Trust Company, Cambridge, Massachusetts, in an account standing in the name of Estate of Alfred R. Smith, Arthur W. Rutter, Admr. It appeared that this account had been entirely withdrawn, but no evidence was introduced as to the purposes for which the withdrawals were made, or what became of the money so withdrawn. Rutter was never appointed Administrator in Maine of the Estate of Alfred R. Smith. On January 18, 1939, Rutter was removed as Administrator, c. t. a. by the Probate Court for Middlesex County and, on January 19, 1939, Ruth Agnes Connell was appointed Administrator c. t. a. d/b/n and qualified by giving a bond on January 30, 1939. On February 13, 1939, a petition was filed by Ruth Agnes -Connell praying that Rutter be ordered to turn over assets of the estate to her. No decree has ever been entered on this petition. On January 11,1940, Ruth *436 Agnes Connell filed a petition praying that the Probate Court proceed to state the account of Arthur W. Butter, and that said Butter be charged with whatever might be found to be due from him. On April 30, 1940, the Court entered a decree on this petition reciting that ‘It is decreed that the items of said account be stated as follows . . . Schedule C, Item 1, balance in hands of accountant as of January 18, 1939, $2,509.09.’ No order was ever entered directing Butter to deliver .or turn over this balance to the succeeding Administrator. Buth Agnes Connell as Administrator c. t. a. d/b/n has not filed any account of 'her administration of the estate. On February 23, 1940, the plaintiff paid to Buth Agnes Connell, Administrator, c. t. a. d/b/n, the sum of $2,409.09. (The total payment was $2,509.09, but $100 had no connection with this matter.) This was approximately two months prior to the entry of the decree above referred to stating the account. On January 21, 1939, Frank Mulready, Esquire, who-was attorney for both the plaintiff and Buth Agnes Connell, notified the defendant Bank by letter that, Butter had been removed as Administrator and, on January 20th, Buth Agnes Connell had been appointed Administrator. It appeared that Mr. Mulready wrote several letters to the defendant and, on one occasion,, conferred with Mr. Sawyer and other representatives of the defendant with respect to restoring the account and paying over to Buth Agnes Connell the- amount of' the balance on deposit.
“This was not done, and this action was brought.
“Upon the foregoing Findings of Fact, I find for the defendant.”
At the close of the evidence the plaintiff duly made twenty-five- requests for findings of fact and rulings of law which the- court dealt with in due course. It is not necessary- to set these out in detail as the plaintiff has argued and briefed three issues, which it stated to be as follows : “ (a) The judge erred in ruling there was no consideration for the- ‘Joint Control- Countersignature Agreement.’’ (b); The judge erred in ruling a. ‘Joint Control.. Counter *437 signature Agreement’ void as-against public policy, (c) the judge erred in ruling that there was- no evidence that Rutter embezzled the funds of the estate of Alfred R. Smith.” All other questions are therefore considered waived. Mullen v. Board of Sewer Commissioners, of Milton, 280 Mass. 532, 537. Kay v. Audet, 306 Mass. 337, 338.
It may serve a useful purpose to point out that no question of pleading was raised or passed on at the trial and no question of variance between the pleadings and the findings is now open. Breen v. Burns, 280 Mass. 222, 228. Mass. Building Finish Co. v. Brenner, 288 Mass. 481.
The court has made elaborate findings of fact as to which there appears to be no dispute. It is the case tried and not that pleaded that now counts. If on these, findings it is clear there can be no recovery it is immaterial that the court has erred in dealing with requests for rulings. If the conclusion is right it is of no legal consequence that a wrong legal trail was followed in reaching that conclusion.
It is well settled a request for report will be sustained for error and a new trial granted only when the error complained of affects the substantial rights of the parties. See G. L. ch. 231 s. 132 made applicable to the municipal court of the City of Boston by sec. 110 of said chapter, Cf. Holton, et als. v. American Pastry Products Corp., 274 Mass. 268. McSorley v. Risdon, 278 Mass. 415. Brotkin v. Feinberg, 265 Mass. 295, 298, 299. Freeman v. Robinson, 238. Mass. 449.
The plaintiff concedes, and we think rightly so, there was no contract between it and the defendant which bound the defendant to observe the terms of the so-called “Joint Control Countersignature Agreement.” In other-words, the plaintiff does not now -contend that the said agreement was a tri-party agreement to which-the defendant' was a party. Nor does the plaintiff contend that the agreement *438 above referred to created a trust whereby the defendant was a trustee of funds for the benefit of the plaintiff and said Rutter. These contentions are not reported for our consideration and therefore are not now open. Baker v. Davis, 299 Mass. 345.
What the plaintiff now, in substance, claims is that the plaintiff has a right of subrogation to the position of the administrator to whom it has paid because of an alleged breach of the probate bond on which it was surety for Rutter, the first administrator apparently, for said estate. This position is not tenable. It is now well established that “subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities.” This right does not necessarily depend upon contract, but grows out of the relation which two parties sustain to each other. The party subrogated acquires no greater rights than those of the party for whom he is substituted. Jackson Company v. Boylston Mutual Insurance Company, 139 Mass. 508, 510. Boston & Maine R. R. v. Hartford Fire Insurance Company, 252 Mass. 432, 436. Wagner v. Providence Insurance Company, 150 U. S. 99, 108. St. Louis, I. M. & S. Ry. Co. v. Commercial Union Insurance Company, 139 U. S. 223, 235, Aetna Life Insurance Company v. Middleport, 124 U. S. 537, 549.
The plaintiff has cited numerous cases relating to the right of subrogation but we feel they are not applicable to. the facts of the case reported to this division. The cases cited by the plaintiff come within the principle “that a banker who knows that a fund on deposit with him is a trust fund cannot appropriate that fund for his private benefit; or where a banker charged with notice of the- con *439 version, joins in assisting others to appropriate it for their private benefit, is liable to refund the money if the appropriation is a breach of the trust.” cf. Allen v. Puritan Trust Company, 211 Mass. 409, 422.
The report here shows that the money was withdrawn from the defendant bank by the administrator in his official capacity, and later properly re-deposited in another bank in his name as administrator of the estate in question. So far as ''appears from the evidence reported and the trial judge’s findings the defendant was an innocent party in no way connected with the subsequent conduct of the alleged defaulting administrator. The defendant violated no legal duty it owed the estate. The so-called “Joint Control Agreement” whch Butter gave to procure the contract of suretyship- was for the protection only of the surety. It did not bind the estate, or confer any rights to the administratrix appointed by the probate court after Butter was removed. Since she as administratrix had no contracturai rights against the defendant, the plaintiff could acquire no such rights from her by way of subroga-: tian. cf. Allen v. Puritan Trust Company, 211 Mass. 409, 419. St. Louis, I. M. & S. R. Co. v. Commercial Union Insurance Company, 139 U. S. 223, 235. cf. Aetna Life Insurance Company v. Middleport, 124 U. S. 537, 549.
Since it is clear from the findings reported the plaintiff has no right of recovery, it becomes immaterial the court did not follow the correct legal trail in coining to a right conclusion. The order therefore is
Report dismissed.